## Freihofer Estate

Before Klein, P. J., Bolger, Hunter, Lefever, Saylor and Shoyer, JJ.

*Edwin Hall, II,* and *Harry J. Alker, Jr.,* for surviving executor and trustee.

*Gordon Butterworth* of *Rambo & Maier, Morris L. Weisberg, Allen B. Endicott* of *Endicott, Dowling & Endicott, M. Jacob Markman, Horace M. Schell, Thomas P. Mikell* of *Saul, Ewing, Remick & Saul, Richardson Blair, Francis L. VanDusen* and *Joseph H. Cochran,* for creditors.

BOLGER, J., January 7, 1954. — On December 29, 1952, a hearing was held before Bolger, J., on reference by the court of a petition for leave to sell two of the properties involved in the present petition at public sale. At that hearing two real estate experts testified. One, Charles A. Hild, a member of the board of revision of taxes, stated that his private office handled these properties for the surviving executor and trustee. He testified that he believed that the area in which these

properties are located had great potential value because the population in the Northeast is increasing. He stated that he believed the properties should not be sold at public sale, but at private sale. On cross-examination, he admitted that he testified before the auditor on several occasions that the "properties would be salable in the following spring"; but no sales followed. The other witness was Boyd T. Barnard of the Jackson-Cross Company. Mr. Barnard testified that the neighborhood was static; that he believed that if the properties were offered for sale privately by special campaign that they could be sold, but that if they were not so sold during the spring, that he would be in favor of a public sale. Similar views were expressed on behalf of creditors by Lemuel B. Schofield, Esq.; Leonard J. Mercer, Esq., and Horace M. Schell, Esq. The court, over the objection of a few creditors, dismissed the petition and in an opinion indicated that creditors should feel free to renew their requests for a public sale should no private sale be forthcoming by the end of the following June.

E. A. Havens, court-appointed appraiser, valued these properties on June 30, 1952, at $427,000.

On September 14, 1953, a hearing was held, after due notice, before Bolger, J., on a petition for an order upon the executor to sell. Again the surviving executor resisted the petition, but the court, acting upon the request of a majority of creditors in number and amount and the opinion of Boyd Barnard and attorneys representing creditors, expressed at the hearing on December 29, 1952, directed the sale stating that it was the first time that the majority of creditors in amount and number had had their wish for an early conclusion of the prolonged administration of the vexatious affairs of this estate acted upon favorably. No criticism was expressed of the failure of the surviving executor to sell at private sale.

The public sale was held by Samuel T. Freeman and Company on October 28, 1953, after extensive advertising and notice. Mr. Freeman's report of the preparations and the conduct of the sale is attached to this record. The price yielded was $260,000. It appears that adequate notice of the sale was given; that the sale was attended by many interested parties and that the bidding was active and required a substantial period of time. No objection was voiced as to the conduct of the sale.

At the hearing on the motion to approve the sale heard on November 20, 1953, counsel for the surviving executor stated that creditors in the amount of $85,000 objected to the sale on the ground that the price of $260,000 was only 61 percent of the appraised value fixed by the court-appointed appraiser. The court heard the reasons given by objecting creditors, all of whom relied upon the differential between the sale price and the appraised value and requested that the confirmation of the sale be refused. However, neither the attorney for the surviving executor nor for any of the creditors, nor anyone else, presented a higher offer. In support of the sale, Thomas P. Mikell, Esq., representing the Land Title Bank and Trust Company, substituted trustee for bondholders on a mortgage in the amount of $306,000; Francis L. Van Dusen, Esq., representing the Pennsylvania Company for Banking and Trusts, trustee under the will of Mary R. Berger, claimant in the amount of $68,280; Horace M. Schell, Esq., representing the Land Title Bank and Trust Company, claimant in the amount of $34,000; M. Jacob Markmann, Esq., representing a creditor in the amount of $11,380.75; Richardson Blair, Esq., representing Tradesmens National Bank and Trust Company, claimant in the amount of $70,000, and other attorneys representing other creditors, all requested the approval of the sale. John F. Corcoran, Esq., ap-

pearing for Hubert J. Horan, Esq., counsel for William J. Riley, claimant in the amount of $360,000, stated at the hearing that his client did not object to the sale. Subsequently, Mr. Corcoran advised the court that his client approves the sale. Counsel for two of these approving creditors, both fiduciaries, stated that they had obtained recent appraisals. One by John F. Dohman of the Jackson-Cross Company, who made a complete study of the reasons for the sale and the extent of Mr. Freeman's efforts to sell, stated that his appraisal was $280,000. No one pressed for production of Mr. Dohman's testimony although he was present and offered as a witness. This valuation weighed heavily with the court.

Testator, William Freihofer, died June 26, 1932, and letters testamentary were granted on July 5, 1932. The estate was hopelessly insolvent. The court, more than 11 years ago, upon the filing of the surviving executor's account, appointed Frank Rogers Donahue, Esq., auditor upon the application of the creditors. Practically all of the assets of this estate were hypothecated at the time of Mr. Freihofer's death. The assets are presently in the amount of approximately $2,000,-000. Respecting the properties now before the court, the record reveals that the surviving executor has done his best to dispose of them at private sale to the advantage of the estate. He has been prodded from time to time by the creditors, both before the auditor and in this court, to dispose of them. His reply has always been that he obtained excellent prices for the other properties and could do the same for the present ones if he were given time. In the opinion of the court, Mr. Alker has had ample time to dispose of these properties at private sale, especially since he was put on notice by this court's opinion following the hearing on December 29, 1952. The reasons for the court's approval of this sale are the fully advertised and fairly conducted sale, the approval of the sale by a majority of the creditors

in number and amount who are the real owners of the assets; the testimony of Boyd T. Barnard and the valuation of Mr. Dohman; that ample opportunity has been afforded to the surviving executor to sell at private sale; the lack of a higher offer or of any reasonable prospect thereof. The creditors are entitled to the liquidation of this estate after more than 11 years have elapsed since the filing of the executor's account and more than 21 years since the death of testator. We regard this sale as most unusual in the sense that the creditors' wishes are paramount, just as in bankruptcy. We do not regard the sale price as unconscionably low in the light of all of the circumstances. There was no evidence of collusive bidding at the sale.

The objections to the price are based upon illusory hopes which we find invalid. It is true that claims of the United States Government, which have since been withdrawn, held up the liquidation of many of the assets of this estate. However, the time element, in the opinion of the court, has been more than sufficient to permit of private sale. The disparity between the sale price of $260,000 and that of the court-appointed appraiser of $427,000 is, on the surface, a reason why the court might refuse to approve the sale. However, the appraisal by Mr. Havens we regard of less weight than that of Mr. Dohman because the latter's appraisal has the advantage of reviewing the sale. Both are merely matters of opinion and do not necessarily represent the market value either at the time of the hearing on the application for the approval of the sale or at any time thereafter: Earle's Estate, 30 D. & C. 692. To the court's knowledge, there has not up to this date been any higher offer submitted for any of the properties. In fact, objections voiced by John Patrick Walsh, Esq., by letter to the court two days after the decree of confirmation, wherein Mr. Walsh stated that he represented Walter Buechner, James Roberts, Paul Slattery, Robert Carroll, Caroline Yingst, Maurice

Granatoor and Harry Greenberg, contained no substantial reason other than that expressed by other creditors. The court has no recollection of Mr. Walsh or of any of his clients being present at the hearing on the application for the confirmation of the sale.

Where there has been a completely advertised and a fair and open public sale of real estate without collusion, pursuant to order of court, the price obtained is prima facie fair and reasonable and the burden is upon objectors to prove the contrary. The present objectors have failed to sustain this burden.

The court is, therefore, satisfied that the decree of confirmation dated November 25, 1953, was properly entered.