417 A.2d 138

In re ESTATE of Fay Earhart DOBSON, a/k/a Fay E. Dobson.

Appeal of Mary Virginia DOBSON, Sarah Jane Troy and the Catholic-Negro American Mission Board.

Supreme Court of Pennsylvania.

Argued March 6, 1980.

Decided July 3, 1980.

478

Alice Dobson, Clyde P. Bailey, Pittsburgh, for appellants at No. 57 and appellee at No. 73.

Terrence F. McVerry, Jane Dale Ressler, Gondelman, Baxter, Mansmann & McVerry, Pittsburgh, for appellants at No. 73 and appellee at No. 57.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN, FLAHERTY, and KAUFFMAN, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

This appeal presents the question whether appellee, the executor of decedent's estate, properly disposed of decedent's one-fourth interest in a Subchapter S corporation. The executor sold decedent's stock back to the corporation's board of directors, who purchased the shares on behalf of the corporation. Appellants, beneficiaries under decedent's will, contend that the sale price is below market value of the shares. Unlike the orphans' court, we agree with appellants that the executor improperly computed the value of decedent's shares. Accordingly, we vacate the decree of the orphans' court and remand for a determination of the amount of surcharge.

On March 16, 1977, Fay Earhart Dobson died testate, leaving a will dated December 28, 1971. The will was probated in Allegheny County and letters testamentary were granted to appellee, Abraham Fishkin, Esq., decedent's son-in-law. Other than a specific legacy to a granddaughter, the will provided that the estate be distributed in equal shares to five named beneficiaries—the Catholic Negro-American Mission Board and four daughters, Alice Dobson Fishkin, Sara Jane Troy, Anne Dobson McDonald and Mary Virginia Dobson.

The executor filed an inventory of the estate, valuing the assets at $168,902.97. Seventy shares of Nordev, Inc. stock, which decedent received from her husband's estate, were included in the inventory at the executor's value of $60,000.

Nordev, chartered in 1954, operated as a tax-option small business corporation under the provisions of Subchapter S of the Internal Revenue Code. Nordev engaged primarily in real estate development. At decedent's death, its principal asset was a 200 acre tract of land located in Marshall Township, Allegheny County. This tract was partially subdivided for sale, but the substantial portion of the property had been developed as a golf course. Since its construction,

the golf course provided Nordev a steady income in addition to gains the corporation realized from the periodic sale of developed lots.

On September 19, 1977, at a private sale, the executor sold decedent's Nordev shares back to the corporation at the inventory value of $60,000. No court approval of the sale was sought. Following this disposition of the stock, the executor filed a first and final account. At audit, appellants objected to the account.[1] They argued that the value of decedent's shares was "far in excess of the redemption price accepted by the accountant." As a result of the alleged undervaluation, appellants sought a hearing on the actual value of the shares and the appropriate surcharge of the executor.

At the hearing on the objections to the account, the executor testified that as an expert on real estate appraisal he valued the shares by projecting a potential sales price for the underlying assets of Nordev and then subtracting corporate liabilities and taxes.[2] That sum was adjusted to reflect decedent's ownership of only a one-fourth interest in the company.[3]

Appellants presented the testimony and report of a real estate appraiser. The witness appraised the property at

1. One named beneficiary, Alice Dobson Fishkin, attorney for the estate and wife of the executor, did not object to the accounting.

2. All parties agree that decedent's seventy Nordev shares are properly valued by considering the value of the underlying land assets of the company. See also Rev. Rule 59–60, 1959—1 C.B. 237. In his opinion, the auditing judge properly points out that the "question of valuation of shares of stock in a closely owned corporation is a complex matter." Here, however, the parties stipulate that the land accurately reflects the Nordev, Inc. share value. This stipulation removes from consideration any difficult questions of the marketability of securities of a closely held business and the related problems of valuation of minority blocks of stock where there are restrictions on transferability.

3. The executor projected three potential selling prices for the Nordev, Inc. land and other assets. The table below shows these calculations. The executor's valuation of $60,000 reflects the highest potential sales price reduced by the deductions for taxes and other sale expenses which the executor believed were appropriate.

$665,300, or $3,290 per acre, a value not much different from the lowest figure considered by the executor ($3,200 per acre). Appellants also presented Henry C. Cohen, a certified public accountant and tax lawyer, who testified that the executor erred in calculating the value of decedent's shares by deducting various amounts, such as income taxes and the decedent's cost basis, from the potential sale price of the land.[4] Mr. Cohen then described his method of calculation which did not utilize these deductions taken by the executor and, concluded that the estate shares were worth approximately $107,489.

Based on the auditing judge's view that the "impact of capital gains tax involved in any sale of the land," that the estate's "seventy (70) shares represented a minority interest," that the "undeveloped land" was of "speculative character," and that "the estate has recovered $60,000 in 1977 for the original investment of $7,000 made . . . in 1954," the auditing judge believed that the executor merely erred in his exercise of discretionary judgment. In light of his findings the auditing judge held that "the evidence is insufficient in law to support a surcharge against the executor."

| | | | | |
|---|---|---|---|---|
| 1) | Sales Price | $580,000.00 | $800,000.00 | $900,000.00 |
| 2) | Sales Commission | −58,000.00 | −80,000.00 | −90,000.00 |
| 3) | Gross Proceeds | $522,000.00 | $720,000.00 | $810,000.00 |
| 4) | Deduct Cost of Land to Compute Taxes | −140,000.00 | −140,000.00 | −140,000.00 |
| 5) | Taxable Profit | $382,000.00 | $580,000.00 | $670,000.00 |
| 6) | Taxes | −221,560.00 | −336,400.00 | −389,000.00 |
| 7) | Balance After Taxes | $161,000.00 | $243,600.00 | $281,000.00 |
| 8) | Replace Cost of Land | + 140,000.00 | + 140,000.00 | + 140,000.00 |
| 9) | Balance For Corporate Use | $301,000.00 | $383,600.00 | $421,000.00 |
| 10) | Pay Corporate Obligation | −180,000.00 | −180,000.00 | −180,000.00 |
| 11) | Net Value to Corporation | $121,000.00 | $203,600.00 | $241,000.00 |
| 12) | Value to Estate—¼ | 30,250.00 | 50,900.00 | 60,000.00 |

4. The witness testified that the executor's calculations failed to include other corporate assets. Additionally, transfer taxes were not deducted by the executor, nor was the proper figure for Nordev liabilities used in the executor's calculation.

Although unwilling to impose a surcharge, the auditing judge nonetheless determined "that there was an error of judgment in the case in the matter of the sale of the 70 shares of stock by the executor to Nordev." As a result the auditing judge suspended distribution of the $60,000 redemption proceeds until November 17, 1978, and allowed appellants an opportunity to produce a purchaser for the shares at a price at least twenty percent higher than that paid by the corporation. Appellants filed exceptions to the decree.

Appellants argued the exceptions before a three judge panel of the orphans court division.[5] Relying on the auditing judge's statement that the executor would have been more prudent "to have invoked the provisions of Section 3353 of the [Probate, Estates and Fiduciary Code, 20 Pa.C.S. § 3353] and to have made the transaction a judicial sale," see *Estate of Penrose*, 486 Pa. 9, 403 A.2d 982 (1979); *Curtis Estate*, 437 Pa. 123, 261 A.2d 589 (1970), the court en banc found that:

"Mr. Fishkin made the appraisal on which the sale was based. He called in no independent appraiser. He is the husband and law partner of Alice Dobson Fishkin, who is an officer, director and stockholder of Nordev, Inc., which corporation purchased the stock in question from the estate. Mr. Fishkin and his wife, who is his law partner, owed a duty to the estate to secure the highest price possible for the estate. On the other hand Mrs. Fishkin, whose interests may be identified with those of her husband, owed a duty to Nordev, Inc. to purchase the proper-

---

5. On December 5, 1978, one of the objecting beneficiaries, Ann Dobson McDonald, withdrew from the appeal. In a letter addressed to this Court, Mrs. McDonald indicates that she requested an advance of a part of her share of the estate. The executor complied, but exacted a waiver of future claims against the estate in exchange for the early distribution. In her letter Mrs. McDonald now claims the waiver was fraudulently obtained. In the present posture of the case, we do not reach the claim Mrs. McDonald seeks to raise. This, of course, in no way affects her right to seek appropriate relief in the orphans' court.

ty at the lowest possible price. The conflict in interest is apparent. Under the circumstances we will void the sale of the 70 shares of stock of Nordev, Inc. by the estate to the corporation for $60,000." [6]

That court also found, however, that the "testimony adduced by objections as to the value of the stock was indefinite." Hence, the court en banc concluded that the executor did not abuse his discretion in taking the deductions and should not be surcharged.[7]

From the adjudication of the orphans' court en banc, cross appeals were filed in this Court. The parties stipulated to consolidation of the appeals. The executor now disputes the court en banc's determination that a conflict of interest existed. Alternatively, the executor argues that if such a conflict did exist, it was not detrimental to the estate. For that reason, the executor contends that the decree nisi of the auditing judge should be confirmed and the $60,000 redemption proceeds be distributed to the beneficiaries. Appellants argue that sufficient evidence appears of record to justify the imposition of a surcharge on the executor. According to appellants, the executor's deductions of state and federal income taxes from the potential sales price of the Nordev property contravened established accounting principles of valuation. Appellants also contend that the executor improperly deducted the decedent's cost basis when calculating

---

**6.** Where a conflict of interest or self-dealing is apparent from the circumstances, there is no need to demonstrate that the fiduciary acted in bad faith or with fraudulent intent. *Estate of Banes*, 452 Pa. 388, 395, 305 A.2d 723, 727 (1973); *Noonan Estate*, 361 Pa. 31, 32, 63 A.2d 80, 84 (1949). Such a conflict of interest may also justify removal of the executor. *Estate of Lux*, 480 Pa. 256, 389 A.2d 1053 (1978); *Rafferty Estate*, 377 Pa. 304, 105 A.2d 147 (1954).

**7.** Both parties agree that the orphans' court en banc erred in voiding the sale of Nordev shares. Indeed, at no time did either party request the relief granted by the court en banc. Nor has Nordev ever been a party to this action. In this posture it was improper for the court to adjudicate Nordev's interests. See *Wiegand v. Wiegand*, 461 Pa. 482, 337 A.2d 256 (1975); *Harper's Estate*, 418 Pa. 196, 210 A.2d 288 (1965); *Cascaden v. Cascaden*, 140 Pa. 140, 21 A. 259 (1891). Compare *Estate of Banes*, 452 Pa. 388, 305 A.2d 723 (1973) (sale set aside where purchaser had knowledge of restriction on sale imposed by decedent's will). See also 20 Pa.C.S. § 793.

the value of decedent's Nordev shares. We believe the amount available for distribution here may not be diminished by those deductions prior to distribution to the beneficiaries. Therefore, because the executor erred in calculating the value of decedent's shares and thereby obtained a price below the value of the shares, we must reverse the decree of the court en banc, vacate the decree of the auditing judge and remand for determination of the proper surcharge to be imposed on the executor.[8]

As we have previously stated, "[s]urcharge is the penalty for failure to exercise common prudence, common skill and common caution in the performance of the fiduciary's duty and is imposed to compensate beneficiaries for loss caused by the fiduciary's want of due care." *Estate of Stephenson*, 469 Pa. 128, 138, 364 A.2d 1301, 1306 (1976), quoting *Miller's Estate*, 345 Pa. 91, 95, 26 A.2d 320, 321 (1942). This standard of care imposed upon the executor has been repeatedly expressed as "that which a man of ordinary prudence would practice in the care of his own estate." *Estate of McCrea*, 475 Pa. 383, 387, 380 A.2d 773, 775–76 (1977). Parties seeking surcharge bear the burden of proving the executor failed to meet the duty of care owed to the estate. *Estate of Lux*, 480 Pa. 256, 389 A.2d 1053 (1978); *Estate of Ellis*, 460 Pa. 281, 333 A.2d 728 (1975). That burden, however, is shifted in circumstances where, as here, the executor exercises the power to sell estate assets at a private sale. 20 Pa.C.S. § 3351; *Wade's Estate*, 343 Pa. 520, 23 A.2d 493 (1942); see also *Lohm Estate*, 440 Pa. 268, 269 A.2d 451 (1970); *Maurice Estate*, 433 Pa. 103, 249 A.2d 334 (1968).

Appellants introduced testimony of a tax accountant that the executor's deductions for taxes and cost basis were inappropriate when determining the value of the

8. While we conclude that the deduction of these items was improper, on this record we are unwilling to hold that appellants have demonstrated their entitlement to the $66,468 in damages they claim. The orphans' court must determine the value of the shares absent the erroneous deductions prior to any determination of the surcharge to be imposed upon the executor.

shares. That testimony reveals, and our research confirms, that a corporation electing Subchapter S treatment is not subject to capital gains taxes such as those projected by the executor. By the very nature of the election, all gains and losses pass through the corporation to the individual shareholders.[9] Thus, any such tax liability is the responsibility of each shareholder, to be computed at that shareholder's marginal rate. The executor failed to rebut this direct evidence of his improper calculation. These facts strongly suggest a conflict of interest. At the very least this record establishes that the executor was clearly negligent in deducting the potential capital gains taxes from the value of decedent's shares prior to offering the stock for redemption.

Likewise, the executor improperly deducted the decedent's cost basis from the potential sales price prior to offering the shares. When calculating the value of the shares to determine the amount available for distribution to the beneficiaries, it is inappropriate to deduct the decedent's cost basis. Rather, at distribution, the beneficiaries are entitled to the full amount realized from the proper sale price of the shares. It cannot be successfully argued, that it is permissible to deduct decedent's initial investment from the sale price in order to determine the sum to be distributed. Nor do we know of any instance in which such a procedure has been judicially approved. Consequently, the executor may not deduct the cost basis from the potential sales price when calculating the value of the stock.

Here, the executor entered into the contract for redemption of shares by Nordev on the basis of an erroneous deduction for income taxes and decedent's cost basis. Typically, inadequacy of consideration does not provide grounds for setting aside a contract entered into by an executor. 20 Pa.C.S. § 3360; see *In re Brereton's Estate*, 355 Pa. 45, 48

9. Gains or losses do not pass through in the limited circumstances where the Subchapter S election is made for the purpose of avoiding capital gains tax on the sale of corporate realty. Here, the election was made in 1954, more than three years before this hypothetical sale. Thus, no presumption of tax avoidance arises. See IRC § 1378, Reg. 1.1378–1.

486

A.2d 868 (1949). Nothing in § 3360, however, "shall affect the liability of a personal representative for surcharge on the ground of negligence or bad faith in making a contract." 20 Pa.C.S. § 3360(a). See also *Gray Estate*, 5 Pa. D. & C.3d 561 (1978). We are therefore of the view that the executor's miscalculation, by improperly deducting taxes and the cost basis, fell below the standard owed as a fiduciary administering the estate. See *Maurice Estate*, 433 Pa. 103, 249 A.2d 334 (1969) (executor surcharged for failing to compute the estate tax liability properly); See also *Estate of Ellis*, 460 Pa. 281, 333 A.2d 728 (1975) (executor surcharged for duplicate commission paid to realtor on sale of single tract of land); *Denlinger Estate*, 449 Pa. 393, 297 A.2d 478 (1972) (executor surcharged for failing to preserve estate property from deterioration). Accordingly, we reverse the decree of the orphans' court en banc, vacate the decree of the auditing judge and remand for proceedings consistent with this opinion.

Decree reversed and proceedings remanded. Each party to pay own costs.