J-A32011-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: ESTATE OF HELEN E. BLUMBERGER, DECEASED, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: JOAN OLDEN, | |
| Appellant | No. 2070 WDA 2014 |

Appeal from the Order December 15, 2014
In the Court of Common Pleas of Allegheny County
Orphans' Court at No(s): 02-14-00386

BEFORE:  SHOGAN, OTT, and STABILE, JJ.

MEMORANDUM BY SHOGAN, J.:                **FILED DECEMBER 23, 2015**

Joan Olden (hereinafter "Appellant" or "The Executrix"), appeals from the order entered on December 15, 2014, that, *inter alia*, removed her as executrix of her mother's estate ("the estate").  After careful review, we affirm in part, vacate in part, and remand with instructions.

The orphans' court set forth the relevant facts and procedural history of this matter as follows:

> This matter came before the Court on a Petition for Removal of Executrix and a Motion to Dismiss Rule to Show Cause Why Executrix should not be removed. A hearing was held on the Petition and Motion on December 8, 2014. On December 15, 2014, the Court issued an Order granting the Petition for Removal and denying the Motion to Dismiss. The Executrix filed a Notice of Appeal and this appeal follows.

> Helen E. Blumberger [("the Decedent")] died testate on December 4, 2013. On January 30, 2014, the Decedent's Will

dated August 23, 1973 was admitted to probate and Letters Testamentary were granted to [Appellant], who is one of the Decedent's three daughters. The Decedent's other two daughters (Bette A. [Blumberger] Saltzman and Diane J. Blumberger), along with [Appellant], are the three residuary legatees named in the Will.

According to the evidence presented at the hearing, the primary asset in the estate is stock owned by the Decedent in a closely-held corporation, known as Universal Builders Supply Company, Inc. (UBS). The Decedent owned 52% of the stock and the remaining 48% was owned by the three residuary legatees, in equal shares. (N.T. 12/08/14, p. 5)

Greg Palmieri, who has been the accountant for UBS since 2006 (although his firm has been involved with the business for many years), testified that the corporation is basically a holding company. The assets are securities, approximately twenty developed lots, and cash. According to Exhibit 1, the fair market value of the assets in the corporation as of the date of death was approximately $8,800,000. (N.T. 12/08/14, pp. 11-17) Mr. Palmieri also testified that the Decedent and [Appellant] took significant loans from the corporation. Specifically, [Appellant] owed the corporation over $372,000 as of the date of death, plus approximately $80,000 in interest. No loans were made to Ms. Saltzman and Ms. Blumberger owed less than $400. The Decedent executed a Promissory Note for the loans, but [Appellant] refused to do so. (12/08/14, pp. 19-32)

Under the PEF Code [(Probate, Estates and Fiduciaries Code, 20 Pa.C.S.A., § 101 et seq.)], the Court has the exclusive power to remove a personal representative for stated reasons or "when, for any other reason, the interests of the estate are likely to be jeopardized by his continuance in office". 20 Pa.C.S.A. §3182. In this case, [Appellant], the Executrix, lists her residence as New York City, although it is believed that she actually resides most of the year in Switzerland. [Appellant] did not appear at the hearing, so she could not be questioned about her residence. Her failure to appear was, apparently, on the advice of counsel, who did not seek court approval to excuse her appearance; but rather, counsel took it upon himself to decide that [Appellant] did not have to appear at a hearing seeking her removal. This advice was erroneous, as it led the Court to believe that she was not interested in the proceedings or she has

something to hide and did not want to be subjected to examination in open court.

In addition, as indicated above, [Appellant] owes over $450,000 to the corporation for loans that were taken between 1998 and 2004. [Appellant] has a fiduciary responsibility to the estate; however, she is also a serious creditor of the estate. The Court believes that this demonstrates a conflict of interest, which could potentially jeopardize the assets of the estate.

Orphans' Court Opinion, 2/2/15, at unnumbered 1-3.

The orphans' court removed Appellant as executrix of the estate, denied Appellant's motion to dismiss, directed the Orphans' Court Department of Court Records to appoint a successor administrator or administratrix, and scheduled a status conference. Appellant filed a timely appeal, and on appeal, Appellant raises five issues that are set forth *verbatim* as follows:

I. Whether the lower court abused its discretion when it granted the Petition for Removal of Executrix and revoked the Letters Testamentary issued by the Allegheny County Department of Court Records in the absence of clear and convincing evidence of any substantial reason for removal.

II. Whether the lower court made an error of law and abused its discretion by admitting classic hearsay as evidence for the reason that it was not being admitted to prove the truth of the matter asserted and then relying on said evidence to conclude that the Appellant had a conflict of interest as a serious creditor *(sic)* of the Estate.

III. Whether the lower court abused its discretion and made an error of law by revoking Appellant's Letters Testamentary based on a finding of conflict of interest which could potentially jeopardize the assets of the Estate when the record contains no competent evidence of any conflict between the Appellant's personal affairs and the affairs of the Estate. or the likelihood of

waste or mismanagement jeopardizing the assets of the Estate or actual proof of a breach of fiduciary duty.

IV. Whether the lower court abused its discretion and made an error of law by revoking Appellant's Letters Testamentary because it believed she was a resident of Switzerland and was not interested in the proceedings when the record is void of any evidence of either and paragraph 7.3 of the Decedent's Last Will and testament explicitly provides that no bond be required of any personal representative 20 Pa.C.S.A. § 3174 (b)(1)(ii).

V. Whether the lower court abused its discretion and made an error of law by directing the Department of Court Records Orphans' Court, to appoint a successor Administrator/ Administratrix within twenty (20) days in a Testate Estate.

Appellant's Brief at 3-5 ("*(sic)*" in original).

In her first four issues, Appellant argues that the orphans' court erred in removing her as executrix. We note that "The removal of an executrix is a matter vested in the sound discretion of the [orphans'] court, and thus we will disturb such a determination only upon a finding of an abuse of that discretion." **In re Estate of Mumma**, 41 A.3d 41, 49 (Pa. Super. 2012).

> The court has statutory authority to remove a personal representative when, *inter alia*, "the interests of the estate are likely to be jeopardized by his continuation in office." 20 Pa.C.S.A. § 3182(5). Furthermore, the court may summarily remove a personal representative when such action is "necessary to protect the rights of creditors or parties in interest." 20 Pa.C.S.A. § 3183. Our case law has recognized that "removal of a fiduciary is a drastic action which should be taken only when the estate is endangered and intervention is necessary to protect the property of the estate." **In re Estate of Pitone**, 489 Pa. 60, 68, 413 A.2d 1012, 1016 (1980) (quoting **Scientific Living, Inc. v. Hohensee**, 440 Pa. 280, 295, 270 A.2d 216, 224 (1970)).

**In re Estate of Westin**, 874 A.2d 139, 142-143 (Pa. Super. 2005).

Appellant first claims that there was no clear and convincing evidence of any substantial reason for her removal. We disagree.

Sufficient reason for removal of a fiduciary has been found when the fiduciary's personal interest is in conflict with that of the estate, such that the two interests cannot be served simultaneously. *In re Estate of Dobson*, 490 Pa. 476, 483 n. 6, 417 A.2d 138, 142 n.6 (1980); *In re Estate of Lux*, 480 Pa. 256, 269-71, 389 A.2d 1053, 1059-60 (1978); *In re Estate of Rafferty*, 377 Pa. 304, 305-06, 105 A.2d 147, 148 (1954). The reasons for removal of a fiduciary must be clearly proven. *Lux*, *supra* at 269, 389 A.2d at 1059; *Scientific Living, supra* at 295, 270 A.2d at 224. However, proof of a conflict of interest can be inferred from the circumstances. *See In re Estate of Gadiparthi*, 158 Pa.Cmwlth. 537, 632 A.2d 942, 946 (1993) (ordering removal of an administrator, based on conflict of interest, after he challenged decedent's ownership of property titled in decedent's name). When a conflict of interest is apparent from the circumstances, bad faith or fraudulent intent on the part of the fiduciary need not be proven. *Dobson, supra* at 483 n. 6, 417 A.2d at 142 n. 6 (citing *In re Estate of Banes*, 452 Pa. 388, 395, 305 A.2d 723, 727 (1973); *In re Estate of Noonan*, 361 Pa. 26, 32-33, 63 A.2d 80, 84 (1949)).

*Westin*, 874 A.2d at 143.

As the orphans' court pointed out, Appellant owed UBS, the primary asset in the estate, more than $372,000.00, plus approximately $80,000.00 in interest. Orphans' Court Opinion, 2/2/15, at unnumbered 2. The orphans' court found that "[Appellant] has a fiduciary responsibility to the estate; however, she is also a serious creditor of the estate. The Court believes that this demonstrates a conflict of interest, which could potentially jeopardize the assets of the estate." Orphans' Court Opinion, 2/2/15, at unnumbered 3. We agree. The unpaid debt to UBS undoubtedly places Appellant in the position of a creditor to the largest asset of the estate. As

- 5 -

Appellant's interests as a creditor are adverse to UBS and jeopardize the value of the estate, we discern no abuse of discretion in the orphans' court finding a conflict of interest and removing Appellant as executrix. **Westin**, 874 A.2d at 142; 20 Pa.C.S. § 3182(5).

In her second issue, Appellant argues that the orphans' court erred by admitting hearsay into evidence and relying on it to conclude that Appellant had a conflict of interest. Specifically, Appellant claims that witnesses Dorothy Kirsch and Greg Palmieri, of the accounting firm of R.D. Hoag & Associates[1] who provided accounting services to UBS, testified based on documents prepared by other persons, and the orphans' court permitted this hearsay testimony and relied on it in making its decision. Appellant's Brief at 17-19.

"When we review a trial court ruling on admission of evidence, we must acknowledge that decisions on admissibility are within the sound discretion of the trial court and will not be overturned absent an abuse of discretion or misapplication of law." **Stumpf v. Nye**, 950 A.2d 1032, 1035-1036 (Pa. Super. 2007). "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the

---

[1] Mr. Palmieri testified that R.D. Hoag & Associates had performed accounting services for UBS since as early as 1999. N.T., 12/8/14, at 11-12.

record, discretion is abused." *Id*. (quoting *Geise v. Nationwide Life and Annuity Co. of America*, 939 A.2d 409, 417 (Pa. Super. 2007) (quotations omitted)).

Hearsay is defined as an out-of-court statement offered to prove the truth of the matter asserted. Pa.R.E. 801(c). This rule, however, is not absolute, and there are exceptions. Records of a regularly conducted activity is one such exception that is defined in Pa.R.E. 803(6) as follows:

> **Exceptions to the Rule Against Hearsay--Regardless of Whether the Declarant Is Available as a Witness**
>
> * * *
>
> The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:
>
> * * *
>
> (6) Records of a Regularly Conducted Activity. A record (which includes a memorandum, report, or data compilation in any form) of an act, event or condition if,
>
> > (A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;
> >
> > (B) the record was kept in the course of a regularly conducted activity of a "business", which term includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit;
> >
> > (C) making the record was a regular practice of that activity;
> >
> > (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a

certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

(E) neither the source of information nor other circumstances indicate a lack of trustworthiness.

Pa.R.E. 803(6)(A)-(E).

Here, Mr. Palmieri and Ms. Kirsch testified that in providing accounting services to UBS, they relied on records kept in the regular course of business to determine the debt Appellant owed to UBS. N.T., 12/8/14, at 25. These records, which were admitted into evidence, consisted of ledgers, bank statements, check registers, and other documents kept by R.D. Hoag & Associates in the file it maintained for UBS. N.T., 12/8/14, at 28-33, 58-76. Under the business records exception provided in Pa.R.E. 803(6), UBS's records of loans to Appellant were properly admitted as an exception to hearsay.[2] Accordingly, there was no abuse of discretion or error of law in

_____

[2] We note that these records would also have been admissible under 42 Pa.C.S. § 6108, which provides as follows:

**(a) Short title of section.--**This section shall be known and may be cited as the "Uniform Business Records as Evidence Act."

**(b) General rule.--**A record of an act, condition or event shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the tribunal, the sources of information, method and time of preparation were such as to justify its admission.

*(Footnote Continued Next Page)*

the orphans' court admission of these documents into evidence or in its reliance on them in reaching its decision.

Next, Appellant avers that the orphans' court abused its discretion and made an error of law in finding a conflict of interest because the record contains no competent evidence of any conflict between Appellant's personal affairs and the affairs of the estate. Appellant's Brief at 19. We disagree.

As noted above, the testimony of Mr. Palmieri and Ms. Kirsch was properly admitted. Their testimony revealed unpaid debt of more than $400,000.00 from Appellant to UBS, which was the largest asset in the estate. Because we have concluded that the aforementioned testimony was properly admitted, we discern no error in the orphans' court relying on said testimony in reaching its decision. We reiterate, because Appellant's interests as a creditor are adverse to UBS and jeopardize the value of the estate, there was no abuse of discretion in the orphans' court finding a conflict of interest and removing Appellant as executrix. ***Westin***, 874 A.2d at 142; 20 Pa.C.S. § 3182(5).[3]

*(Footnote Continued)* ─────────────────

> **(c) Definition.--**As used in this section "business" includes every kind of business, profession, occupation, calling, or operation of institutions whether carried on for profit or not.

42 Pa.C.S. § 6108.

[3] Appellant's argument on this issue, wherein she claims that there was no demand made for repayment of the loans and no damage to the estate, Appellant's Brief at 23, are contradicted by the record. The record reveals
*(Footnote Continued Next Page)*

In her fourth issue on appeal, Appellant argues that the orphans' court abused its discretion and made an error of law by removing her as executrix because it believed she was a resident of Switzerland and was not interested in the proceedings.[4] We conclude that Appellant's argument is misplaced.

Appellant cites no authority for the proposition that the orphans' court abused its discretion in concluding that Appellant's failure to attend the proceedings was indicative of Appellant's lack of interest in the proceedings or that she sought to avoid examination in open court. Orphans' Court Opinion, 2/2/15, at unnumbered 3. Moreover, the orphans' court's consideration of Appellant's failure to attend the hearing was not the basis for its decision; it was merely a factor, as Appellant's outstanding debt to UBS was the focus of the orphans' court decision. *See id*. at unnumbered 1-3 ("[Appellant] is also a serious creditor of the estate. The Court believes

_____
*(Footnote Continued)* _____

Mr. Palmieri testified that the funds paid to Appellant were loans. N.T., 12/8/14, at 19. He stated that if the funds were considered otherwise, they would be subject to tax, IRS scrutiny as to whether there was a second class of stock, and exposure to the IRS revoking S corporation status and placing UBS in C corporation status with significantly greater tax liability. *Id*. at 20. Mr. Palmieri also testified that Appellant was asked to sign a promissory note memorializing the debt, and she refused. *Id*. at 22. Accordingly, Appellant's argument is specious; Appellant refused to acknowledge the debt, the necessity to repay it, and exposed the corporation to significant detrimental tax ramifications.

[4] Appellant states that no bond was required pursuant to her mother's will and 20 Pa.C.S. § 3174 (b)(1)(ii). We point out that the orphans' court did not require Appellant to post a bond; thus, no further discussion of 20 Pa.C.S. § 3174 is necessary.

that this demonstrates a conflict of interest, which potentially could jeopardize the assets of the estate."). As discussed above, the orphans' court may remove an executrix for a conflict of interest under 20 Pa.C.S. § 3182(5), and that decision is left to the discretion of the orphans' court. *Mumma*, 41 A.3d at 49; *Westin*, 874 A.2d 139 at 143. We discern no abuse of discretion and conclude that Appellant is entitled to no relief on this issue.

Finally, Appellant argues that the orphans' court abused its discretion and made an error of law by directing the department of court records to appoint a successor Administrator/Administratrix. Appellant's Brief at 25. Appellant avers that this was improper because it is a testate estate. *Id*. After careful consideration, we agree, and we vacate and remand with instructions.

**Procedure for and effect of removal**

The court on its own motion may, and on the petition of any party in interest alleging adequate grounds for removal shall, order the personal representative to appear and show cause why he should not be removed, or, when necessary to protect the rights of creditors or parties in interest, may summarily remove him. **Upon removal, the court may direct the grant of new letters testamentary or of administration** by the register to the person entitled and may, by summary attachment of the person or other appropriate orders, provide for the security and delivery of the assets of the estate, together with all books, accounts and papers relating thereto. Any personal representative summarily removed under the provisions of this section may apply, by petition, to have the decree of removal vacated and to be reinstated, and, if the court shall vacate the decree of removal and reinstate him, it shall

thereupon make any orders which may be appropriate to accomplish the reinstatement.

20 Pa.C.S. § 3183 (emphasis added).

In *In re Estate of Andrews*, 92 A.3d 1226 (Pa. Super. 2014), a panel of this Court addressed a similar scenario where the decedent died testate, but the orphans' court, after removing an executrix, directed the appointment of an administratrix. This Court held that was error. *Id*. at 1234.

The *Andrews* Court explained:

It is fundamental estate law that letters testamentary are issued when the decedent leaves a will while letters of administration are issued when the decedent dies intestate. An executor(rix) is the person named in the will to act as personal representative while an administrator(rix) is the personal representative when the decedent died intestate. Section 3183 pertains to the removal of a personal representative in general and, accordingly, to the removal of either an executor(trix) or administrator(rix). Thus, the language in that section necessarily provides that, upon removal, the court is authorized to direct the grant of letters testamentary or of administration, as the case may be.

This verbiage, however, does not provide authority for the orphans' court to disregard the strictures regarding who is entitled to serve as the personal representative of an estate. Under section 3155 of the Probate, Estates, and Fiduciaries Code, the following persons are delineated as eligible to be granted letters:

**(a) Letters testamentary.**—Letters testamentary shall be granted by the register **to the executor designated in the will**, whether or not he has declined a trust under the will.

**(b) Letters of administration.**—Letters of administration shall be granted by the register, in such form as the case shall require, to one or more

- 12 -

of those hereinafter mentioned and, except for good cause, in the following order:

> (1) Those entitled to the residuary estate under the will.
>
> (2) The surviving spouse.
>
> (3) Those entitled under the intestate law as the register, in his discretion, shall judge will best administer the estate, giving preference, however, according to the sizes of the shares of those in this class.
>
> (4) The principal creditors of the decedent at the time of his death.
>
> (5) Other fit persons.

20 Pa.C.S. § 3155.

*Andrews*, 92 A.3d at 1234 (emphasis added).

Thus, because the Decedent died testate, letters testamentary must issue. *Andrews*, 92 A.3d at 1234. In this regard, the Decedent's will provided for an executor and potential substitute executrices as follows:

ARTICLE VII

Executor

Section 7.1    Appointment. I appoint my husband, BEN A. BLUMBERGER, Executor of this my Will. In the event of the inability or unwillingness of my husband to serve or to continue to serve as my Executor, I appoint as successor Executrix my daughter, [Appellant], if she is willing and able to serve; if she is not, I appoint my daughter, DIANE JULIA BLUMBERGER, if she is willing and able to serve; if she is not, I appoint my daughter, BETTE A. BLUMBERGER.

- 13 -

The Decedent's Will, 8/23/73, at 9, Article VII, Section 7.1 (Certified Record at 2).

"Thus, the people who can serve as personal representatives are limited to those who are **designated in the will**." *Andrews*, 92 A.3d at 1234 (emphasis added). As noted above, the will states that if Appellant cannot serve as executrix, the Decedent's daughter Diane shall serve in this capacity, and if Diane is unwilling or unable, then the Decedent's daughter Bette shall serve. Accordingly, because the list of potential executrices has not been exhausted, it was error for the orphans' court to direct the appointment of an administrator because viable substitute executrices remain in the Decedent's will.

For the reasons set forth above, we affirm the orphans' court's removal of Appellant as executrix of the Decedent's estate. However, we vacate that part of the order which directed the appointment of an administrator or administratrix. We remand this matter to the orphans' court for a determination as to whether Diane Blumberger is willing and able to serve as executrix, and if she is not, the orphans' court shall then determine if Bette A. Blumberger Saltzman is willing and able to serve as executrix. If neither Diane Julia Blumberger nor Bette A. Blumberger Saltzman can serve as executrix, the orphans' court shall then direct the appointment of an administrator or administratrix as provided in 20 Pa.C.S. § 3155.

Order affirmed in part and vacated in part. Case remanded with instructions. Jurisdiction is relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


DATE: 12/23/2015