J-S25044-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: THE ESTATE OF IRENE G. USCHOCK | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: WILLIAM USCHOCK | : : : : : : : | |
| | : | No. 23 WDA 2018 |

Appeal from the Order December 18, 2017
In the Court of Common Pleas of Westmoreland County
Orphans' Court at No(s):  65-08-0671

BEFORE:  GANTMAN, P.J., PANELLA, J., and OTT, J.

MEMORANDUM BY OTT, J.:                          **FILED JULY 24, 2018**

William Uschock appeals, *pro se*, from the order entered December 18, 2017, in the Court of Common Pleas of Westmoreland County, which granted his brothers', Richard Uschock and David Uschock, petition to remove William Uschock as co-executor of the estate of their deceased mother, Irene G. Uschock ("Estate") pursuant to 20 Pa.C.S. § 3128.[1]  William Uschock complains the trial court erred in removing him as executor of the Estate. Based upon the following, we affirm.

The facts underlying the Orphans' Court's order are as follows.  On March 16, 2008, Irene G. Uschock passed away.  **See** Death Certificate,

_____

[1] The Orphans' Court order is appealable under the collateral order doctrine. **See** Pa.R.A.P. 313; **In re Estate of Mumma**, 41 A.3d 41, n.1 (Pa. Super. 2012).

3/19/2008, at 1. Her Will was probated and the Estate was opened on May 1, 2008. **See** Certification of Notice of Estate Administration, 5/19/2008. An inheritance tax return was filed and accepted by the Pennsylvania Department of Revenue on April 27, 2009. **See** Notice of Inheritance Tax Appraisement, 4/27/2009. The Estate is insolvent. **See id.**

Irene Uschock's Will named her five children, Richard Uschock, David Uschock, William Uschock, Diane Santmyer, and Patricia Glott as co-executors and equal residuary beneficiaries of the Estate. **See** Last Will and Testament, 7/22/1991, at SECOND - THIRD. Patricia Glott, Diane Santmyer, and Richard Uschock renounced their rights as executors, leaving David Uschock and William Uschock as the remaining co-executors.[2] **See** N.T., 12/14/17, at 5.

The principal assets of the Estate include several parcels of land in Mt. Pleasant Township, including a farm, and a smaller plot of land containing a furniture store and two other buildings. **See id.**, at 6-7. The Will provided, in pertinent part: "I direct that my co-executors get together to divide the farm in a manner they can agree to or by majority vote."[3] Last Will and Testament, 7/22/1991, at FOURTH.

---

[2] Patricia Glott and Diane Santmyer are not a part of this appeal.

[3] Due to the reluctance of the executors to pay for an appraisal of the assets, the values as stated on the Inheritance Tax Return were calculated by multiplying the assessed values by the common level ratio. **See** N.T., 12/14/17, at 18.

Since the Estate was opened in 2008, no action has been taken to finalize and close the Estate for approximately nine years, largely due to the reluctance of William Uschock to cooperate in settling the Estate and paying its debts. *See id.*, at 62-63. His co-beneficiaries and co-executor approached him "dozens" of times regarding the sale or lease of the large farm property, and he rejected their proposals.[4] *Id.* Meanwhile, he continued to occupy the property for his own personal use.[5] *See id.*, at 40. To the present day, he cultivates the farm, and uses the family furniture store to store his farming equipment and to sell his personal fruits and vegetables. *See id.*

On multiple occasions, other beneficiaries attempted to discuss solutions with William Uschock and were rejected. When approached about listing the farm property, he continually insisted on delaying any potential sale.[6] *See id.*, at 39. Richard Uschock testified that he attempted to hand

---

[4] There have been occasional rentals for the two residences on the smaller parcel. *See* N.T., 12/14/2017, at 26.

[5] Richard Uschock testified he was not aware of any payments made by William Uschock to the Estate in exchange for the use of the land. *See* N.T., 12/14/2017, at 30. William Uschock disputed this and claimed that he used the funds from his use of the land to pay down the debts of the Estate, but the trial court found Richard Uschock's testimony to be more credible. *See id.*, at 76. William Uschock also claimed his use of the property was pursuant to an agreement with his father, who predeceased his mother. *See id.*, at 42-43. Even if such an agreement existed, the provisions of the Will control the disposition of the farm.

[6] William Uschock claimed he wished to maximize the value of the Estate by waiting to sell until the "turnpike interchange… comes through," which he

his brother information about the valuation of the property, which William Uschock refused to take. *See id.*, at 54-55. Similarly, when the other brothers identified a potential lessee for the farm property in the spring of 2017, William Uschock refused, told them he would be farming the land, and refused to sign the lease. *Id.*, at 28. He remained adamant even after the family voted to go forward with the lease. *See id.*, at 66-67.

Since 2008, the assets of the Estate were placed at risk on numerous occasions due to its insolvency. Other family members were forced to pay real estate taxes out-of-pocket in order to protect the real estate from a tax sale. *See* N.T., 12/14/2017, at 8. Richard Uschock testified he received notice several times that mortgage payments were delinquent. *See id.*, at 31. Additionally, William Uschock's placement of his farm equipment on the furniture store parcel caused the family's insurance provider to threaten to rescind its coverage. *See* Loss Control Recommendations Letter, 6/21/2017, at 1. The equipment was subsequently removed at the expense of the Estate. *See* N.T., 12/14/2017, at 56.

On July 21, 2017, Richard and David Uschock petitioned for William Uschock's removal as co-executor of the Estate. The case proceeded to a

---

contended would "maybe triple" the value of the property. N.T., 12/14/2017, at 79-80. He relied on nothing but his own non-expert evaluation of the property's future value to support this contention. *See id.*, at 80-83.

hearing on December 14, 2017. On December 18, 2017, the Orphans' Court issued an order removing him as co-executor. This *pro se* appeal followed.[7]

Before we address the merits of this appeal, we note the *pro se* brief William Uschock submitted to this Court has substantial defects. **See** Pa.R.A.P. 2111. It does not contain a statement of jurisdiction or a statement of questions presented. **See** William Uschock's Brief at 1-2. More importantly, it fails to cite to authority entirely, and does not contain any meaningful discussion of the issue raised. **See id.** It consists of two handwritten pages, and baldly states that the Orphans' Court acted "without an iota of evidence to show cause," without indicating where the evidence is lacking in the reasoning.[8] **Id.** at 2.

We are guided by the following: "When issues are not properly raised and developed in briefs, when the briefs are wholly inadequate to present specific issues for review[,] a Court will not consider the merits thereof." **Commonwealth v. Maris**, 629 A.2d 1014, 1017 (Pa. Super. 1993). Moreover,

> [w]hile this court is willing to liberally construe materials filed by a *pro se* litigant, we note that appellant is not entitled to any particular advantage because []he lacks legal training. As our

---

[7] The Orphans' Court did not order William Uschock to file a concise statement of errors complained of on appeal under Pa.R.A.P. 1925(b), but did issue an opinion under Pa.R.A.P. 1925(a) on February 6, 2018.

[8] Likewise, William Uschock's reply brief merely recites facts that contravene those adopted by the Orphans' Court, and does not cite to authority or develop any analysis. **See** William Uschock's Reply Brief at 1-3.

supreme court has explained, "any layperson choosing to represent [himself] in a legal proceeding must, to some reasonable extent, assume the risk that [his] lack of expertise and legal training will prove [his] undoing."

*Commonwealth v. Rivera*, 685 A.2d 1011, 1013 (Pa. Super. 1996) (citation omitted). Nevertheless, because we are able to discern the nature of the claim raised as a challenge to his removal as executor, we will address William Uschock's appeal.

Our standard of review for the findings of an Orphans' Court is as follows:

> The findings of a judge of the orphans' court division, sitting without a jury, must be accorded the same weight and effect as the verdict of a jury, and will not be reversed by an appellate court in the absence of an abuse of discretion or a lack of evidentiary support. This rule is particularly applicable to findings of fact which are predicated upon the credibility of the witnesses, whom the judge has had the opportunity to hear and observe, and upon the weight given to their testimony. In reviewing the Orphans' Court's findings, our task is to ensure that the record is free from legal error and to determine if the Orphans' Court's findings are supported by competent and adequate evidence and are not predicated upon capricious disbelief of competent and credible evidence.

*In re Estate of Warden*, 2 A.3d 565, 571 (Pa.Super. 2010) (citations and quotations omitted).

Section 3182 of the Probate, Estates, and Fiduciaries Code governs the removal of executors and provides, in relevant part:

> The court shall have exclusive power to remove a personal representative when he:
>
> (1) is wasting or mismanaging the estate, is or is likely to become insolvent, or has failed to perform any duty imposed by law; or

. . .

(5) when, for any other reason, the interests of the estate are likely to be jeopardized by his continuance in office.

20 Pa.C.S. § 3182.  With respect to Section 3182, the Pennsylvania Supreme Court has stated:

While, under that statutory provision, orphans' courts do have the power of removal of personal representatives and such removal lies largely within the discretion of such courts, an abuse of such discretion renders its exercise subject to appellate review. . . . Our present inquiry is whether the court below abused its discretion . . . .

In our review we are mindful of well settled principles in this area. An executor, of course, is chosen by the testator himself, and his appointment represents an expression of trust and confidence by the testator.  Hence, his removal is a drastic action which should be undertaken only when the estate within the control of such personal representative is endangered. To justify the removal of a testamentary personal representative the proof of the cause for such removal must be clear.

*In re Estate of Lux*, 389 A.2d 1053, 1059 (Pa. 1978) (citations omitted).

"The personal interest of a fiduciary being in conflict with that of the estate and the unfriendly feeling between the heirs constitute sufficient cause for removal." *Id.* at 1060, *quoting* *Rafferty Estate*, 105 A.2d 147, 148 (Pa. 1954).  "Where a conflict of interest or self-dealing is apparent from the circumstances, there is no need to demonstrate that the fiduciary acted in bad faith or with fraudulent intent." *In re Estate of Dobson*, 417 A.2d 138, n.6 (Pa. 1980).

Turning to the present matter, in removing William Uschock, the Orphans' court found the following:

- 7 -

Based upon the relevant testimony, the Court was able to establish that the estate has been open for over nine years [ ], and in that time no movement has been made towards finalizing and closing the estate. All parties credibly testified that this lack of movement was based on a refusal by William Uschock to agree to any sale of the at-issue real property, based on his own non-expert evaluation of the present and future value of said real property. It is evident that for the past nine years, William Uschock has been making use of said real property, while simultaneously refusing to move toward a resolution of the estate with his former co-executor Richard Uschock and his current co-executor David Uschock. Co-executor David Uschock made known his intention to facilitate a liquidation and closing of the estate in order to facilitate a disbursement to all five (5) heirs to the estate as soon as possible. The December 18, 2017 Order was issued to expedite the closing of the simple estate at issue, based upon the testimony of the parties and witnesses listed above.

Orphans' Court Opinion, 2/6/2018, at 1-2. We agree with the court's conclusion.

The record demonstrates that William Uschock persistently refused to sign a lease, even after his co-executor and co-beneficiaries conducted a vote in favor of signing.[9] Additionally, by insisting upon waiting to sell, William Uschock put the Estate assets at risk several times. Due to the insolvency of the Estate, the delay of the sale resulted in missed mortgage and real estate tax payments. This nearly led to a tax sale multiple times, which would have deprived all beneficiaries of their rightful share of the Estate, and forced other parties to contribute personal funds to save the property. The record is replete

---

[9] **See** Last Will and Testament, 7/22/1991, at FOURTH (stating "I direct that my co-executors get together to divide the farm in a manner they can agree to or by majority vote").

with evidence that William Uschock "[mismanaged] the estate." **See** 20 Pa.C.S. § 3182(1). Accordingly, his removal is appropriate under Section 3182.

Furthermore, we are guided by **Lux**, **supra**, in which our Supreme Court affirmed an order removing an appellant as executor because she knowingly failed to report assets of the estate. **See Lux**, 389 A.2d at 1060-61. The **Lux** Court found the ruling in **Rafferty Estate**, 105 A.2d 147, 148 (Pa. 1954), in which an order removing an administrator was affirmed, governed because the appellant demonstrated "clear conflicts of interest" and caused "manifest hostility" between herself and the other heirs. **Id.** at 1060.

The **Lux** Court also noted that our Supreme Court had previously distinguished **Rafferty** in **DiMarco Estate**, 257 A.2d 849, 854 (Pa. 1969), by holding that a testator-chosen personal representative, rather than an administrator, could not be removed "in the absence of a showing of injury by reason thereof to the best interests of the estate." **Id.**, quoting **DiMarco Estate**, 257 A.2d 849, 854 (Pa. 1969). However, despite the **Lux** appellant's status as a testator-chosen executor, the Supreme Court ordered her removal because her failure to report assets displayed a conflict of interest and her continuance in office would put the estate at risk of injury going forward. **Id.**

Similar to **Lux**, **supra**, William Uschock's refusal to cooperate, coupled with his personal use of the land, constituted a conflict of interest. William Uschock caused animosity by frustrating his siblings' efforts to sell the real

estate and distribute the residue, if any. Moreover, his use of the land for his personal farming operation is clearly at odds with the interest of the other residuary beneficiaries in selling the real estate and settling the Estate as soon as possible. Because of the nine years since the Estate has been opened and exposed to risk, paired with William Uschock's refusal to cooperate and his personal interest in using the land, there is sufficient evidence to indicate the interests of the Estate are "likely to be jeopardized by his continuance in office." 20 Pa.C.S. § 3182(5).

We further note William Uschock was chosen by the testatrix as executor, as in *Lux*, *supra*, and his removal is therefore a "drastic action" taken only because the Estate would be otherwise endangered. *Lux*, *supra*, 389 A.2d at 1059. However, it is less drastic since David Uschock, who was similarly chosen by the testatrix, remains as executor.[10] *See* N.T., 12/14/2017, at 90. Consequently, we conclude the Orphans' Court did not abuse its discretion in removing William Uschock as executor.

William Uschock's handwritten application for relief, filed May 14, 2018, is denied as it is duplicative of the issues raised on appeal.

Order affirmed. Application for relief denied.

---

[10] David Uschock's counsel assured the Orphans' Court he would work to close the Estate and to facilitate the disbursement of the assets as soon as possible. *See* N.T., 12/14/2017, at 90.

- 10 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/24/2018