## Banes Estate.

Argued January 12, 1973. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

reargument refused June 25, 1973.

*Jules Pearlstine,* with him *Larry J. Schwartz,* and *Pearlstine, Salkin, Hardiman, Robinson and Hunn,* for appellant.

*Philip D. Weiss,* with him *McTighe, Brown, Weiss, Bonner & Stewart,* for appellee.

*Joseph E. Lastowka, Jr.,* with him *Kassab, Cherry and Archbold,* for Shell Oil Company, appellee.

OPINION BY MR. JUSTICE ROBERTS, May 23, 1973:

J. Walter Banes died on October 25, 1962, leaving a will which was duly probated. The will designated decedent's wife, Inez Banes, appellee, as trustee-executrix. Thereafter, the first and final account was filed on November 1, 1967, and adjudicated on May 28, 1968.

Decedent's estate consisted primarily of a 22-acre tract of land located in Montgomery and Horsham Townships. In 1950, decedent and his first wife, Reba Banes, leased the property[1] to the 309 Drive-In Corporation.[2] The lease entitles the lessee to extend the terms of the lease until the year 2024. It further provides that "[i]n the event that the Lessors shall desire to sell the demised premises and to offer the said premises for sale, the Lessee shall have the first option to purchase the demised premises for the sum of Forty Thousand Dollars ($40,000)."

---

[1] A portion of the property immediately adjoining the residence was excluded from the lease.

[2] In June, 1969, the assets of the 309 Drive-In Corporation were transferred to V. C. Smith, the present lessee.

Decedent's will conveyed this tract of land—as part of the residue—to: ". . . my trustees hereinafter named, IN TRUST, to hold, invest and reinvest the same, to collect the income, and after paying all expenses incident to the management of the Trust, to pay the net income quarterly, or in other convenient installments, unto my wife, Inez M. Banes, as long as she shall live; and upon her death to pay the income annually on December Fifteenth to my surviving issue per stirpes, until twenty years following the death of the last surviving grandchild of mine who was living at the time of my death. Upon such termination, the principal of the Trust shall be divided per stirpes among my issue then living."

In March, 1970, Inez Banes, without court approval or notice to the interested parties (decedent's children and grandchildren), negotiated the sale of approximately 1½ acres of the 22-acre tract of land in order to pay the estate's debts and administration expenses of $9,400. The trustee-executrix first obtained a release from the lessee as to the 1½ acres and then sold the parcel to Shell Oil Company, appellee, for $110,000. Under the terms of the agreement the lessee received, after deduction for settlement expenses, 75% of the proceeds ($75,000), while the estate received 25% of the amount.[3]

The instant action was commenced in June, 1970, when appellant, Robert Banes, decedent's son—a named successor trustee and a remainder beneficiary—filed a petition to set aside the conveyance and remove Inez Banes as trustee. Appellant urged in his petition that the decedent's will specifically prohibited the sale of the property. The orphans' court, however, dismissed the petition. Exceptions were timely filed and on May

---

[3] The agreement provided that there would be no reduction in the lessee's rent.

22, 1972, the court reaffirmed its determination denying the petition. This appeal followed and we reverse.

As this Court said in *Pearson Estate,* 442 Pa. 172, 180, 275 A. 2d 336, 339 (1971) (quoting from *Carter Estate,* 435 Pa. 492, 496-97, 257 A. 2d 843, 845 (1969)):
" 'The law and the legal principles governing the interpretation of wills is well settled, but their application to poorly or ambiguously drawn wills (especially to holographic wills and lengthy testamentary trusts) is often difficult. The pertinent principles may be thus briefly summarized: A testator's intent, unless unlawful, shall prevail; that intent shall be ascertained from a consideration of (a) all the language contained in his will, and (b) his scheme of distribution, and (c) the circumstances surrounding him at the time he made his will, and (d) the existing facts; and (e) canons of construction will be resorted to only if the language of the will is ambiguous or conflicting or the testator's intent is for any reason uncertain. . . .' " Accord, *Benson Estate,* 447 Pa. 62, 68, 285 A. 2d 101, 104 (1971); *Jessup Estate,* 441 Pa. 365, 276 A. 2d 499 (1970).

Here, decedent's will grants the trustee the general power ". . . (i) [t]o sell at public or private sale, for cash or credit, with or without security, to exchange or to partition property and to give options for sales or exchanges." However, paragraph seventh expressly prohibits sale of the 22-acre leased premises while the lease remains "operative". That paragraph states: "SEVENTH: I *direct that while a certain Lease to the 309 Drive-In Corporation, dated January 16, 1950, shall remain operative, my Trustee, or Trustees, shall not convey nor offer for sale my real estate* situate in the Townships of Montgomery and Horsham, bounded on the Northwest by Evans Road, on the East by Bethlehem Pike, and on the South and Southwest by Welsh Road." (Emphasis added.)

The orphans' court held that paragraph seventh did not prohibit sale of the 1½ acres and, thus, court approval was not required as provided in the Act of April 18, 1949, P. L. 512, art. IX, §963, 20 P.S. §320.963[4]. The court reasoned that since the lessee released his interest in the 1½ acres, the lease was no longer "operative" as to that parcel. Therefore, the court concluded, the trustee had authority, under her general powers, to sell the property, despite paragraph seventh's prohibition.

We are unable to agree with this determination. The court properly stated: "Decedent was obviously aware that if the trustee was to offer the real estate for sale, the option of the lessee would be thereby activated, in which case the lessee would have the right to buy the valuable asset for only $40,000. *The restriction in the will was therefore to avoid activating lessee's option.*" (Emphasis added.)

The court, however, failed to give effect to decedent's desire to avoid activating the lessee's option because he wanted to insure that the trust and its beneficiaries—rather than the lessee—received the full value of the

---

[4] Section 963 provides: "When the trustee is not authorized to do so by this act or is denied the power to do so by the trust instrument or when it is advisable that the sale have the effect of a judicial sale, he may sell, for any purpose of administration or distribution, any real or personal property of the trust, at public or private sale, or may pledge, mortgage, lease, or exchange any such property, or grant an option for the sale, lease, or exchange of any such property, under order of the court, upon such terms and upon such security and after such notice as the court shall direct, whenever the court shall find that such sale, pledge, mortgage, lease, exchange, or option is for the best interests of the trust." Act of April 18, 1949, P. L. 512, art. IX, §963, 20 P.S. §320.963 (footnote omitted).

It should be noted that Section 963 has been repealed and replaced by Act of June 30, 1972, P. L. 508, No. 164, §3353, 20 Pa. S. §3353.

property and the benefits of appreciation, if and when it was sold. Here, the trust received only one-fourth the value of the land. The remaining amount was paid to the lessee for release of his interest in the 1½-acre portion of the property. Paragraph seventh was clearly designed to avoid such a result. We must conclude that the will prohibits sale of any of the 22 acres while the lease remains "operative" as to any portion of the property. To hold otherwise would divert the major portion of the proceeds of the sale from the trust to the lessee—as payment for his release—and, thus, defeat decedent's testamentary intention and scheme of distribution.

Since, as we have concluded, the terms of the trust instrument deny the trustee the power to sell the property, court approval is required prior to sale. Act of April 18, 1949, P. L. 512, art. IX, §963, 20 P.S. §320.-963[5]. The court, relying on *Mintz Trust*, 444 Pa. 189, 282 A. 2d 295 (1971), stated that "even assuming there was a deviation from the will", it would now, two years after the sale, approve the sale nunc pro tunc.

In *Mintz Trust*, supra at 201, 282 A. 2d at 301, we said: "Furthermore, it is well established that an orphans' court possesses the power to approve a deviation from the express terms of a trust nunc pro tunc, if it reviews the subject as if the question had been presented to the court at the time the investments were made. See Henry's Estate, 341 Pa. 439, 444, 19 A. 2d 66, 69 (1941); Restatement (Second) of Trusts §167, comments e, f (1959)."

We hold, however, that the facts here do not justify a departure from the express terms of the decedent's will. The trustee sold a piece of property worth $110,-000 to pay debts amounting to less than $10,000. The interested parties were neither given notice of the March, 1970, sale nor afforded an opportunity to pay

---

[5] Id.

the debts or advance alternative action and, thus, avoid a sale. "The heirs should have the opportunity of showing that claims are not well founded, or to pay just debts and avoid a sale. Where the indebtedness is denied, it must be duly established before any order of sale is made: . . ." 5 Hunter, Pennsylvania Orphans' Court Commonplace Book, Sales of Real Estate by Order of Court §3(b) at 288 (1959). See also *Noonan Estate*, 163 Pa. Superior Ct. 70, 60 A. 2d 374 (1948), aff'd, 361 Pa. 26, 63 A. 2d 80 (1949).

Moreover, appellee, Inez Banes, was in the conflicting positions of trustee, beneficiary, and creditor. Without notice to the other interested parties or court approval, she sold the property for the purpose of satisfying a debt which the estate owed to her.[6] In *Noonan Estate*, 361 Pa. 26, 31, 63 A. 2d 80, 83 (1949), this Court stated: "The test of forbidden self-dealing is whether the fiduciary had a personal interest in the subject transaction of such a substantial nature that it *might* have affected his judgment in material connection. Downing Estate, supra at p. 359, citing Scott on Trusts, Vol. 2, §170.12, p. 877, and Restatement, Trusts §170(1), Comment h." (Emphasis in original.)

Here, there is no affirmative showing that the trustee-creditor acted in bad faith or with fraudulent intent. But, as the Court said in *Noonan Estate: "Where there is self-dealing on the part of a fiduciary, it is immaterial to the question of his liability in the premises whether he acted without fraudulent intent or whether the price received for his sale of trust property was fair and adequate:* see Tracy v. Central Trust Company, 327 Pa. 77, 79, 192 A. 869, citing Everhart v. Searle, 71 Pa. 256, 260, where the following was approvingly

---

[6] The record does not reveal whether Inez Banes requested payment from the estate during the two years after the final account and prior to the sale of the property.

quoted from Hare and Wallace's Notes, 1 Lead. Cases in Eq., p. 210,—'It matters not that there was no fraud meditated and no injury done; *the rule [forbidding self-dealing] is not intended to be remedial of actual wrong, but preventive of the possibility of it.'* " Id. at 32, 63 A. 2d at 84 (emphasis added). See also *Comerford Estate,* 388 Pa. 278, 130 A. 2d 458 (1957); Restatement, Second, Trusts §170 (1959).

Finally, we note that appellee, Shell Oil Company, having purchased the property in March, 1970—prior to court approval—with complete knowledge of paragraph seventh's prohibition, is not a bona fide purchaser for value. "To be such, [it] must have paid value for the property *without knowledge of the attendant circumstances* constituting the executor's breaches." *Noonan Estate,* supra at 33, 63 A.2d at 84 (emphasis added). "If the trustee in breach of trust transfers trust property to a person who takes with notice of the breach of trust, the transferee does not hold the property free of the trust, although he paid value for the transfer." Restatement, Second, Trusts §288 (1959).

It must be concluded that the court erred in failing to set aside the conveyance. However, since appellee, Inez Banes, acted in good faith and in reliance upon competent counsel, we find no abuse of discretion in the court's refusal to remove her as trustee. See *Mintz Trust,* supra at 200-01, 282 A. 2d at 301.

Decree of the orphans' court approving the March, 1970, conveyance, is reversed and the record remanded for proceedings consistent with this opinion. Each party pay own costs.