J-A10035-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| TRUST UNDER DEED OF JEAN M. GOODWIN, SETTLOR DEED DATED FEBRUARY 10, 2000 | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: LYNN S. NAGELE, EXECUTRIX OF THE ESTATE OF EDWIN J. GOODWIN, DECEASED, NAMED EXECUTOR OF JEAN GOODWIN'S ESTATE, AND SURVIVING CO-TRUSTEE | : : : : : : : | No. 313 EDA 2020 |

Appeal from the Order Entered December 11, 2019
In the Court of Common Pleas of Montgomery County Orphans' Court at
No(s):  2016-X3022

BEFORE:   PANELLA, P.J., OLSON, J., and COLINS, J.*

MEMORANDUM BY COLINS, J.:                    **FILED JUNE 17, 2021**

Appellant, Lynn S. Nagele, appeals from the order entered December 11, 2019, that:   (1) confirmed the accounting of the trust established under the Deed of Trust of Jean M. Goodwin, Settlor, dated February 10, 2000 ("the Trust"), subject to certain findings of the trial court; (2) ordered the filing of a schedule of distribution of funds from the Trust; and (3) awarded the distribution of payments from the Trust, following confirmation of the schedule of distribution.  We affirm.

The facts and procedural history underlying these appeals are as follows. Edwin J. Goodwin, Jr. ("Husband"), and Jean M. Goodwin ("Wife") were husband and wife.  They were the parents of Appellant Lynn S. Nagele

_____

* Retired Senior Judge assigned to the Superior Court.

("Lynn"), Appellee Thomas Goodwin ("Thomas"), and Edwin J. Goodwin III.[1] Lynn has a son, Michael Nagele ("Michael").

Wife died on December 1, 2002, leaving a will[2] and the deed of trust. Both the will and the deed of trust had been drafted by Albert L. Chase, Esquire, who served as long-term counsel for Husband, Wife, and Lynn. Attorney Chase took his fees from the Trust's assets, not from the funds of Wife's estate.

The deed of trust provided for the creation of a marital trust ("Paragraph SECOND") and a non-marital trust ("Paragraph THIRD") following Wife's death. Trial Court Opinion ("Trial Ct. Op."), dated December 11, 2019, at 2. The terms of the marital trust were far less restrictive than those relating to the non-marital trust. However, in September 2005, when the assets of Wife's estate were transferred pursuant to the terms of the residuary clause of her will, there were insufficient funds[3] to establish both kinds of trusts and only the non-marital trust ("the Trust") was funded. Husband and Lynn were named as trustees. The terms of the Trust required that --

---

[1] In this opinion, we refer to the descendants of Husband and Wife by their first names, in order to avoid confusion, where multiple family members share the same last names.

[2] The will was also dated February 10, 2000, and was duly probated by the Register of Wills of Montgomery County on December 19, 2002. Husband was executor of Wife's estate.

[3] "Because the estate accounting reflects a gross value that was less than the federal estate tax threshold, the Marital Deduction Trust was never created." Trial Ct. Op., dated December 11, 2019, at 2.

the Trustees shall pay the net income to [Husband] or apply it directly to his benefit . . . In addition, the Trustees may from time to time pay to him or apply directly for his benefit so much of the principal as the Trustees may, in their sole discretion, deem proper for his maintenance and support, after considering all other assets and sources of income available to him[.] . . .

[H]usband shall have the right to withdraw from principal from time to time amounts totaling not more than Five Thousand Dollars ($5,000.00) or Five (5%) percent of principal from the Trust, whichever is greater, in any calendar year, by giving the Trustees notice.  The right shall not be cumulative.

Exhibit 8 at 6, THIRD Paragraph, §§ A.-B.

Husband died on July 4, 2015.[4]  On September 2, 2016, Thomas, individually and as a remainder beneficiary of the Trust, filed a petition to compel the filing of an accounting and inventory of the Trust,[5] which the trial court granted on October 4, 2016.

On February 1, 2017, Lynn filed the Trust accounting, which is dated from September 30, 2005, to January 1, 2017.  According to the accounting, the Trust consists of --

principal receipts of $443,005.94, income of $115,758.59, gains on sales of principal assets of $121,204.00, since reduced by principal disbursements of $78,368.22, income disbursements of $4.00 and distributions to beneficiaries of $0.00 from principal and $115,754.59 from income, leaving a combined balance on hand

---

[4] Husband died in Bucks County; Lynn is executor of his estate.

[5] Thomas contemporaneously filed a petition to compel the filing of an accounting and inventory of Wife's estate, which the trial court also granted on October 4, 2016.  **See** Montgomery Count Court of Common Pleas Docket Number 2002-X3856.  Lynn, in her role of executor of Husband's estate, prepared the accounting of Husband's administration of Wife's estate.  The appeal stemming from the accounting of Wife's estate is Docket Number 310 EDA 2020 and Journal Number J-A10034-21.

of $492,116.31 held in stock, bonds, mutual funds and cash[.]
. . .
All parties having or claiming any interest in the estate of whom the accountant has notice are stated to have received written notice of the audits in conformity with the Rules of Court.

All said parties having any interest in this Trust are said to be living, of age, and *sui juris* . . .

Trial Ct. Op., dated December 11, 2019, at 2-3.

On March 3, 2017, Thomas filed 26 objections to the accounting.[6]

Thomas's objections included:

8.    Thomas . . . hereby objects to the fees of [Attorney] Chase in the amount of $17,945.00 paid on 9/19/2007 and any other fees.

9.    Thomas . . . hereby objects to the fees of [Attorney] Chase in the amount of $3,000.00 paid on 4/23/2014 and any other fees.
. . .
12.   Objection to the vesting or making of notes to family members. . . .

   f. [Michael's] balance due information of $8,520.37 is lacking in specificity in order to permit an accurate review of this amount, what it is for and how that number was arrived at. . . .

18.   The page 10 listing for Michael['s] amount due 7/19/2016 of $8,520.37.  If the [a]ccount[ing] is filed through January 1, 2017, this information is outdated and should have been updated. In addition, there is no information as to why this amount was due, what the terms were, whether it is secured, and the interest rate.  This is self-dealing for Lynn . . .

22.   [Michael's] payment on page 15 in 2010 of $7,500.00 is objected to as it is completely lacking in any information in order to permit accurately a review of this alleged transaction.  This transaction involving the Trustee's son appears to be self-dealing

_____

[6] The next day, Edwin J. Goodwin III also filed objections to the accounting, but his objections do not appear to form the basis of the trial court's decision nor the issues raised on appeal.

and complete documentation is requested. The income payments to [Husband] are objected to as it is believed that they do not match up to income earned. In addition, the [a]ccount[ing] seems to make it appear that there were payment[s] each year. The Trust appears to make provisions for quarterly payments. . . .

26. Objection to the schedule[] of distribution based on the incorrect [a]ccount[ing] and insufficient cash on hand to make full distributions.

Objections to First and Final Account[ing], 3/3/2017, at 2-3, 5-6.

On March 6, 2017, the trial court called for an audit of the Trust.[7] Discovery occurred, and Lynn provided brokerage statements, bank statements, and fiduciary income tax returns dating back to 2002.

On August 20 and 21, 2018, the trial court held a hearing on these objections. Prior to the hearing, Thomas withdrew Objections Number 5 to 7, 12(a)-(c) & (g), 16, 17, and 19. N.T., 8/20/2018, at 5.

At the hearing, Lynn testified that she would discuss the Trust's money with Husband and would tell him, "[I]t's your money, [D]ad[.]" *Id.* at 16. When asked if her impression was that Husband could receive whatever he wanted from the Trust, she answered affirmatively. *Id.* at 27. When asked if Husband could spend all the Trust's money, she replied, "Sure. It was his money." *Id.* at 29; *see also id.* at 45 ("it was his anyhow"). She also confirmed that she knew that Husband was making principal distributions from the Trust. *Id.* at 29. After reviewing a series of distributions made by Husband from 2003 to 2006, Lynn agreed "that approximately $56,000 that went out was principal" and that she "didn't do anything to stop that[.]" *Id.*

_____

[7] On the same date, the trial court also ordered an audit of Wife's estate.

at 32. When asked if she knew that the Trust's principal was supposed to be "only going out at discretion[,]" she answered affirmatively. *Id.* at 45. She also acknowledged that, despite being co-trustee, she was not involved in any distributions made while Husband was alive; instead, Husband "was the one in charge of all the distributions being made[.]" *Id.* at 50.

Lynn was asked about a loan from the Trust to herself and Robert Nagele that was listed in the accounting as "forgiven"; she admitted that the loan was not forgiven and that the notation in the accounting was a mistake. *Id.* at 43; *see also id.* at 121.

Attorney Chase also testified. He discussed an alleged payment by Michael for a mortgage loan made from the Trust:

[Q. I]f there is everything relating to this alleged $7,500 payment, it should be in the documents which were produced [to] me by the discovery process, correct?

A. That may be all I had. . . .

Q. I am saying you gave me everything you had, but there was nothing in there about that $7,500?

A. . . .[I]f you say it is. . . .

Q. You saw no documents to establish that, correct?

A. My information was that it was paid to [Husband]. That's one of the reasons I couldn't get the accounts to balance.

Q. Sir, my question was not whether you heard, somebody told you, you thought. My question was, you didn't see any documents to support that claim, did you?

A. Not at the time that I answered, no.

Q. What about now?

A. I have seen some since then.

Q. And they have never been produced, have they?

A. I don't know.

Q. Well, if you didn't produce them –

A. I have seen them since we started in this proceeding.

Q. But they have never been produced as part of the discovery process . . .

A. Some of the things just came through with [Lynn].

Q. And that's a little late, isn't it?

A. It's during the process.

N.T., 8/21/2019, at 14-15.

Additionally, Attorney Chase confirmed that the Trust was not a "marital deduction trust[,] " because "[t]he assets were not sufficient to create one." *Id.* at 17. He repeatedly testified that he believed that Husband could do whatever he wanted with the Trust's monies, because "[i]t was all his." *Id.* at 39. For example,

Q. In your deposition on line 6, page 21, I ask, my question is: Where is the authority in the [w]ill to allow distributions?

And your response was: He could take it out of the [T]rust, and whether it was in the [T]rust at that time or not, I assume that he decided to take it this way. . . .

A. Yes, I think that's basically what I said. . . . [Husband] handled this stuff himself and he did what he did.

*Id.* at 40. The following portion of Attorney Chase's deposition was also read into the record: "I was permitted to counsel [Husband] on anything he wanted to ask me. But I didn't ask him that I'm going to counsel him on things he wasn't asking me." *Id.* at 41.

On December 11, 2019, by order and opinion, the trial court confirmed the accounting and ordered Lynn to pay distributions from the Trust. In the order, Attorney Chase's legal fees were "capped at $10,000.00 in light of the errors in counseling the trustees[,]" thereby requiring Attorney Chase to "refund the trust $11,005.00." Trial Ct. Op., dated December 11, 2019, at 7. The trial court also surcharged[8] Lynn "$7,500.00 for an alleged mortgage loan payment from her son, Michael[,]" that was calculated into the total surcharge for the outstanding balance due on said loan, $11,121.31. *Id.* at 9. Lynn was further surcharged "the amount of $19,681.28 for her loan that was mistakenly stated as forgiven in the trust account" and "the amount of $50,000 for her multiple failures to uphold her fiduciary duties[.]" *Id.* at 10.

On January 9, 2020, Lynn filed a timely notice of appeal. On August 27, 2020, the trial court entered an order, instructing Lynn to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On September 15, 2020, Lynn filed a concise statement of errors. On October 20, 2020, the trial court entered a statement in lieu of an opinion,

---

[8]    Surcharge is the remedy when a trustee fails to exercise common prudence, skill and caution in the performance of its fiduciary duty, resulting in a want of due care. [*S*]ee *In re Miller's Estate*, 345 Pa. 91, 93, 26 A.2d 320, 321 (1942) (defining "surcharge" as "the penalty for failure to exercise common prudence, common skill and common caution in the performance of the fiduciary's duty ...").

*In re Estate of Warden*, 2 A.3d 565, 573 (Pa. Super. 2010) (some internal citations and quotation marks omitted).

- 8 -

declaring that the opinion accompanying its order of December 11, 2019, would serve as its opinion pursuant to Pa.R.A.P. 1925(a).

Lynn now presents the following issues for our review:

I.      Did [the trial c]ourt err in not issuing a concise Adjudication/Order that could properly be responded to?

II.     Did the [trial c]ourt err in stating that the Trust Account[ing] was filed due to the death of [Wife] on December 1, 2002?

III.    Did the [trial c]ourt err in omitting that the distributions/disbursements were out of income not principal?

IV.     Did the [trial c]ourt err in concluding as a matter of law in stating that all parties having any interest in this estate are said to be living, of age, and *sui juris*?

V.      Did the [trial c]ourt err in stating "Surcharge is the penalty...and is imposed to compensate beneficiaries for loss caused by the fiduciary's want of due care.", inferring that that there was or is any loss to beneficiaries?

VI.     Did the [trial c]ourt err in stating that Trust was administered as a marital trust, and in stating that "admitted error...clearly establish patent error"?

VII.    Did the [trial c]ourt err in stating the Adjudication states [Lynn] and Attorney Chase acknowledge error, NT, 8/21/18, p. 17, Exhibit 11?

VIII.   Did the [trial c]ourt err further in stating NT 8/20/18, p. 29, that improper administration as Principal Distributions were made to [Husband]?

IX.     Did the [trial c]ourt err in stating that "counsel appeared apprehensive to actually counsel [Husband] on the terms contained in this deed of trust..."?

X.      Did the [trial c]ourt err in stating that "Lynn was aware that [Husband] was making distributions of principal out of the estate..."?

XI.     Did the [trial c]ourt err in stating that "Lynn . . . , as co-trustee, did not keep records[ of ]the investments of the trust"?

XII.   Did the [trial c]ourt err in stating that "Attorney Chase stipulated that he also did not track receipts of principal or income for the trust..."?

XIII.  Did the [trial c]ourt err in stating that "Credible testimony established that the personal relationship [Husband] had with [Attorney] Chase interfered with his ability to provide sound legal advice,..."?

XIV.   Did the [trial c]ourt err in stating that "Lynn...took no action in stopping these distributions."?

XV.    Did the [trial c]ourt err in omitting that all receipts of principal and income were properly recorded and included on Estate Trust Tax Returns?

XVI.   Did the [trial c]ourt err in stating that the terms of the mortgages were not abundantly clear and the record keeping was lacking?

XVII.  Did the [trial c]ourt err in stating that "The record keeping of this trust was abysmal." ?

XVIII.      Did the [trial c]ourt err in finding [Lynn] breached her fiduciary duty in accordance with 20 Pa.C.S.[] Sections 7771, 7774, 7779, and 7780?

XIX.   Did the [trial c]ourt err in sustaining Objection #2?

XX.    Did the [trial c]ourt err in sustaining Objection #4?

XXI.   Did the [trial c]ourt err in sustaining Objections #8 and #9?

XXII.  Did the [trial c]ourt err in sustaining objection #10?

XXIII. Did the [trial c]ourt err in sustaining Objection #13?

XXIV.  Did the [trial c]ourt err in sustaining Objection 15 in surcharging accountant the amount of $19,681.28?

XXV.   Did the [trial c]ourt err in sustaining Objections #12(f), #18 and #22 in surcharging co-trustee for $7,500 []alleged mortgage loan payment?

XXVI.  Did the [trial c]ourt err in surcharging [Lynn] $11,121.31?

XXVII.      Did the [trial c]ourt err in sustaining Objection #20?

XXVIII.      Did the [trial c]ourt err in sustaining Objection #21?

XXIX. Did the [trial c]ourt err in sustaining Objection #25?

XXX. Did the [trial c]ourt err in sustaining Objection to #26:

1) in surcharging Lynn . . . $19,681.28 for loan that at the time of preparing and filing of the [a]ccount[ing], was mistakenly stated "forgiven"?

2) in surcharging Lynn . . . $11,121.31 for the amount remaining on the "improper" loan she made to her son? Did the [trial c]ourt err in stating that: a) Lynn . . . made said loan to her son; and b) that said loan was "improper"?

3) in surcharging Lynn . . . $50,000 for her "multiple failures to uphold her fiduciary duties"[]?

[XXXI.] Did the [trial c]ourt err

1) in surcharging Lynn . . . and Attorney Chase for Thomas['s] counsel fees for the alleged errors complained of in the Adjudication dated 12/12/19 and Order dated 8/27/20?

2) in stating that [Attorney] Chase . . . should refund the Trust $11,005 as surcharge for overpayment of counsel fees for his failure to properly counsel the trustees?

3. in that the [trial c]ourt erred in denying a "tax reserve" be held, although said point is moot as any distributions cannot be made until conclusion of this action?

Lynn's Brief at 3-7 (suggested answers omitted).

When reviewing an order entered by the orphans' court, the "decision will not be reversed unless there has been an abuse of discretion or a fundamental error in applying the correct principles of law." *In re Estate of Krasinski*, 188 A.3d 461, 466 (Pa. Super. 2018) (*en banc*) (citation omitted), *aff'd*, 218 A.3d 1246 (Pa. 2019).

Preliminarily, we note that, for her first five challenges and her ninth to twelfth, fourteenth to sixteenth, nineteenth to twentieth, twenty-second to

twenty-fourth, twenty-sixth to twenty-ninth, and thirty-first issues, Lynn fails to include any citations to legal authority or to the certified record.[9] Lynn's Brief at 16-18, 21-29, 31-33, 35-37, 41-43. By failing to provide any citations to case law or any other supporting authority for these claims, Lynn's first five issues and nineth through twelfth, fourteenth through sixteenth, nineteenth, twentieth, twenty-second to twenty-fourth, twenty-sixth to twenty-ninth, and thirty-first issues are thus waived.[10] *Kelly v. Carman Corp.*, 229 A.3d 634, 656 (Pa. Super. 2020) (citing Pa.R.A.P. 2119(a) (argument shall include citation of authorities); *e.g.*, *Commonwealth v. Spotz*, 18 A.3d 244, 281 n.21 (Pa. 2011) (without a "developed, reasoned, supported, or even intelligible argument[, t]he matter is waived for lack of development"); *In re Estate of Whitley*, 50 A.3d 203, 209 (Pa. Super. 2012) ("The argument portion of an appellate brief must include a pertinent discussion of the

---

[9] In fact, Lynn's arguments for her first five challenges consist of only one to three sentences each. Lynn's Brief at 16-18. The arguments for her fifteenth and twenty-seventh issues are likewise only three sentences long. *Id.* at 26, 31-32.

Additionally, although Lynn's seventeenth claim is undeveloped, as it is related to her eighteenth claim, we will address both issues together. *Id.* at 27.

[10] Assuming Lynn's nineteenth, twentieth, and twenty-second issues were not waived, we would find that the trial court correctly sustained Objections Number 2, 4, and 10 for the reasons given in its opinion. Trial Ct. Op., dated December 11, 2019, at 6-8 (at trial, Lynn "admitted to a lack of record keeping on her part in deference to the efforts of [Husband]" (citing N.T., 8/20/2018, at 39-46; Stipulation of Fact, 2/14/2019, at ¶ 2); while the accounting lists distributions of trust income, the accounting does not list distributions from trust principal, even though Lynn testified that she made principal distributions from the Trust (citing N.T., 8/20/2018, at 40-41, 45)).

particular point raised along with discussion and citation of pertinent authorities[; t]his Court will not consider the merits of an argument which fails to cite relevant case or statutory authority" (internal citations and quotation marks omitted)); *Lackner v. Glosser*, 892 A.2d 21, 29-30 (Pa. Super. 2006) (explaining appellant's arguments must adhere to rules of appellate procedure, and arguments which are not appropriately developed are waived on appeal; arguments not appropriately developed include those where party has failed to cite any authority in support of contention)).

For her **sixth issue**, Lynn contends that the trial court "err[ed] in stating that [the] Trust was administered as marital trust, the administration was administered properly as a Non-Marital Residuary Trust and in stating that 'admitted error...clearly establish patent error[.]'" Lynn's Brief at 18. For her **seventh issue**, Lynn argues that the trial court erred when stating that she and Attorney Chase "acknowledge error[.]" Lynn's Brief at 19 (citing N.T., 8/21/2018, at 17; Exhibit 11). She continues that "the Trust was properly administered as a Unified Credit Non-Marital Residuary Trust." *Id.* We address both these challenges together, as their arguments overlap.

As noted above, there were insufficient funds in Wife's estate to establish a martial trust, so only the non-marital trust was funded. However, the trial court found that "it was admitted that the trustees and [Attorney Chase] administered the trust, from its inception until [Husband]'s death, as a martial trust rather than a non-marital trust" and that "[c]redible testimony established that the co-trustees and [Attorney Chase] (who as mentioned

- 13 -

earlier was also the scrivener of these documents) believed the marital trust was funded and administered it as such for years." Trial Ct. Op., dated December 11, 2019, at 4. The trial court continued: "This mistake was not realized until shortly before the hearings in this matter and both . . . Lynn . . . and Attorney Chase acknowledged their error." *Id.* (citing Exhibit 11; N.T., 8/21/2018, at 17).

Lynn is correct that neither she nor Attorney Chase explicitly state that they were mistaken about the Trust and believed it to be a martial trust and not a non-marital one. More importantly, Lynn allowed Husband to operate the Trust as if it were governed by the more liberal rules of the martial trust rather than the greater restrictions of the non-marital trust, irrespective of what label they gave to it. Lynn repeatedly acknowledged that she allowed Husband to do whatever he pleased with administration of the Trust and the distribution of its funds, because she believed that "it's [his] money" to do with as he saw fit. N.T., 8/20/2018, at 16; *see also id.* at 27, 29, 32, 45. The trial court's concern was "the poor record keeping of the [T]rust's financial records" combined with the arbitrary and uncontrolled spending of the Trust's principal as if the more generous terms of the marital trust applied, not whether Lynn and Attorney Chase ever admitted confusion over the nomenclature of the Trust. Trial Ct. Op., dated December 11, 2019, at 4.

For her **eighth issue**, Lynn maintains that the trial court erred in stating that principal distributions made to Husband were evidence of improper

administration. Lynn's Brief at 20 (citing N.T., 8/20/2018, at 29). The brief continues:

> [Lynn] submits that the [trial c]ourt erred in failing to acknowledge that Principal Distributions were properly disbursed for taxes and administrative expenses.
>
> [Lynn] further submits that the [t]rial [c]ourt erred in omitting to state Principal Distributions were properly disbursed for taxes and administrative expenses, and that any distribution to or on behalf of [Husband], were properly made out of income.

*Id.* However, Lynn fails to enumerate which distributions should not have been included in the trial court's calculations. *See id.* Her citation to N.T., 8/20/2019, at 29, is unhelpful, as no particular disbursements are discussed on that page of the notes of testimony. Without specifics, we are not capable of reviewing the propriety of the trial court's calculations and analysis and, accordingly, cannot find an abuse of discretion or fundamental error. *Krasinski*, 188 A.3d at 466.

For her **thirteenth claim**, Lynn urges this Court to find that the trial court erred when it concluded that "[c]redible testimony established that the personal relationship [Husband] had with [Attorney] Chase interfered with his ability to provide sound legal advice[.]" Lynn's Brief at 24. "[Lynn] further submits that Attorney Chase's relationship with [Husband] had no negative effect on the stability and growth of the Trust." *Id.* at 25.

The trial court found that, "[d]espite creating these legal documents for [Wife] and [Husband] and maintaining the checkbooks for [Wife]'s Estate and her Deed of Trust, counsel appeared apprehensive to actually counsel

[Husband] on the legality of the terms contained in this deed of trust and [Wife]'s will." Trial Ct. Op., dated December 11, 2019, at 5.

Irrespective of whether Attorney Chase's personal relationship with Husband was a contributing factor, the evidence still established that Attorney Chase failed to provide Husband with sound legal advice concerning the administration of the Trust, instead, as the trial court stated, "letting [Husband] administer the [T]rust in the manner he saw fit." *Id.*

Lynn's **seventeenth and eighteenth issues** are related. Lynn insists that the trial court erred in finding that she "breached her fiduciary duty in accordance with 20 Pa.C.S.[] Sections 7771,[11] 7774,[12] 7779,[13] and 7780[.14]" Lynn's Brief at 28. Lynn "further submits that she did not breach

_____

[11] "Upon acceptance of a trusteeship, the trustee shall administer the trust in good faith, in accordance with its provisions and purposes and the interests of the beneficiaries and in accordance with applicable law." 20 Pa.C.S. § 7771.

[12] "A trustee shall administer the trust as a prudent person would, by considering the purposes, provisions, distributional requirements and other circumstances of the trust and by exercising reasonable care, skill and caution." *Id.* § 7774.

[13] "A trustee shall take reasonable steps to take control of and protect the trust property." *Id.* § 7779.

[14]     **(a) Records.--**A trustee shall keep adequate records of the administration of the trust.

     **(b) Commingling trust property prohibited.--**A trustee shall keep trust property separate from the trustee's own property.

     **(c) Designating trust property.--**Except as otherwise provided in subsection (d) and section 3321 (relating to nominee registration; corporate fiduciary as agent; deposit of securities in

*(Footnote Continued Next Page)*

- 16 -

her fiduciary duties as all records were maintained and provided through extensive Discovery. [Lynn] further submits that the Trust grew from its inception." *Id.* She adds that any errors in the accounting were due to the "limited time . . . given to prepare an [a]ccouting that would be based on previous [a]ccounting for an Estate that commenced in 2002." *Id.* at 27.

Thomas responds that Lynn should "be surcharged $50,000 for her multiple failures of her fiduciary duties in accordance with 20 Pa.C.S.[] § 7771, 7774, 7779 and 7780." Thomas's Brief at 20. He continues: "During the trial, it was established that there were numerous instances in which funds could not be tracked or accounted for by" Lynn or Attorney Chase, including "[a]t least three $10,000.00 trust checks that were not tracked by Trustee's [a]count[ing]." *Id.* We agree.

"[T]he primary duty of a trustee is the preservation of the assets of the trust and the safety of the trust principal." *In re Jerome Markowitz Trust*, 71 A.3d 289, 303 (Pa. Super. 2013). "The standard of care imposed upon a

---

a clearing corporation; book-entry securities), a trustee shall cause the trust property to be designated so that the interest of the trust, to the extent feasible, appears in records maintained by a party other than a trustee or beneficiary.

**(d) Investing property of separate trusts.--**If the trustee maintains records clearly indicating the respective interests, a trustee may invest as a whole the property of two or more separate trusts.

*Id.* § 7780.

trustee is that which a man of ordinary prudence would practice in the care of his own estate." *In re Estate of Warden*, 2 A.3d 565, 573 (Pa. Super. 2010).

Multiple payments were not tracked by Lynn or Attorney Chase. As the trial court noted, "The record keeping of this trust was abysmal[,]" in contravention of 20 Pa.C.S. § 7780(a). Trial Ct. Op., dated December 11, 2019, at 5-6. In her appellate brief, Lynn fails to document her record-keeping or otherwise counter this assertion. *See* Lynn's Brief at 28. To the extent that Lynn attempts to justify her inability to provide adequate supporting documentation for her deficient accounting by contending that she only had limited time to prepare the accounting, *id.* at 27, we note that Thomas's petition for an accounting was filed on September 2, 2016, and her accounting of the Trust was not entered until February 1, 2017. Ergo, Lynn had over seven months to prepare the accounting and to provide supporting documentation. We do not consider seven months to be "limited time"; furthermore, had Lynn been acting with ordinary prudence in the care of the trust and maintaining proper records throughout her time as trustee, she could have provided the accounting and documentation with alacrity. *See* 20 Pa.C.S. §§ 7774, 7780(a); *Warden*, 2 A.3d at 573. Consequently, we find no abuse of discretion or fundamental error, *see Krasinski*, 188 A.3d at 466, in the trial court's conclusion that Lynn breached her fiduciary duty in accordance with 20 Pa.C.S. §§ 7771, 7774, 7779, and 7780. Trial Ct. Op., dated December 11, 2019, at 6.

For her **twenty-first issue**, Lynn states that the trial court "err[ed] in sustaining Objections #8 and #9[,]" both of which challenged Attorney Chase's fees. Lynn's Brief at 30; Objections to First and Final Account[ing], 3/3/2017, at 2.

The orphans' court "has the authority to reduce to a 'reasonable and just' level those fees and commissions claimed by the fiduciary and their counsel." *In re Estate of Geniviva*, 675 A.2d 306, 313 (Pa. Super. 1996) (citation omitted). "Attorneys and executors seeking compensation from an estate have the burden of establishing facts which show the reasonableness of their fees and entitlement to the compensation claimed." *In re Estate of Rees*, 625 A.2d 1203, 1206 (Pa. Super. 1993). In the current action, Attorney Chase presented no evidence in support of the awarding of counsel fees to him, including no time records and no correspondence, and, accordingly, he failed to satisfy his burden of proof. *Id.*

Additionally, Attorney Chase testified that he believed that Husband could do what he wanted with the Trust's assets and that he need not give legal advice to Husband unless Husband explicitly requested his help, which rarely occurred. N.T., 8/21/2018, at 39-41. As the legal guidance given to co-trustees Husband and Lynn was lacking, the trial court's adjustment of Attorney Chase's counsel fees was reasonable and just. *Geniviva*, 675 A.2d at 313.

Lynn's **twenty-fifth issue** asserts that the trial court erred "in sustaining Objections #12(f), #18 and #22 in surcharging [Lynn] for $7,500

[in ]alleged mortgage loan payment[s.]" Lynn's Brief at 33. Lynn alleges that "through [d]iscovery full documentation was provided that said loan payment was made" and "records were produced which provided information regarding all payments made by Michael[.]" *Id.* at 34. However, beyond these bald claims, Lynn fails to cite to any particular document provided during discovery or evidence submitted at trial confirming, recording, or otherwise verifying this $7,500.00 payment. *See id.* at 33-35. Additionally, when given the opportunity at trial, Attorney Chase was unable to offer any records of the transaction. N.T., 8/21/2019, at 14-15. For these reasons, we find that the trial court did not abuse its discretion nor make a fundamental error by surcharging Lynn for the unpaid portion of the mortgage to Michael. *Krasinski*, 188 A.3d at 466.

In her final surviving claim, her **thirtieth issue**, Lynn challenges Objection Number 26 and the surcharges imposed upon her by the trial court. Lynn's Brief at 38-40.

> Ordinarily, the party seeking to surcharge [a trustee] bears the burden of showing a failure to meet the required standard of care. However, the burden shifts to the [trustee] to present exculpatory evidence when a patent error has occurred or when a significant discrepancy appears on the face of the record.

*In re Estate of Miller*, 18 A.3d 1163, 1174 (Pa. Super. 2011) (*en banc*).

Lynn contends that the trial court erred in surcharging her $19,681.28 for a loan that, at the time of preparing and filing the account, was mistakenly labelled as "forgiven." *Id.* at 38. Lynn's brief then makes the following seemingly contradictory statements:

> [Lynn] further submits that during the course of discovery records were produced which provided information that said debt was not forgiven (as mistakenly noted on the [a]ccount[ing] for the [Trust]).
>
> [Lynn] further submits that during the course of discovery records were produced which indicated that said debt was satisfied in full, with a small surplus overpayment.

*Id.* However, Lynn admitted at trial that the "forgiven" notation for the loan on the accounting was a mistake. N.T., 8/20/2018, at 43, 121. Accordingly, the surcharge of $19,681.28 to pay for the outstanding loan was proper.[15]

Her final claim also includes a challenge to the surcharge "in the amount of $50,000.00 for her 'multiple failures to uphold her fiduciary duties[.]'" Lynn's Brief at 40 (quoting Trial Ct. Op., dated December 11, 2019, at 10). While much of her argument is a rehash of contentions addressed above, she adds that the trial "[c]ourt erred in not stating that no loss of assets was incurred, and that the Trust grew since its inception." *Id.* at 41.

Nevertheless, the trial court was well-within it power to impose a surcharge merely for the trustee's "fail[ure] to exercise common prudence, skill and caution in the performance of its fiduciary duty, resulting in a want of due care[,]" *In re Estate of Warden*, 2 A.3d 565, 573 (Pa. Super. 2010),

---

[15] In her thirtieth issue, Lynn also contests the surcharge to pay for the outstanding amount due on Michael's mortgage loan. Lynn's Brief at 39. This argument largely overlaps her assertions under her twenty-fifth issue, which we have already found to be meritless. *Id.* at 33-35.

We need not reach the question of whether the loan was properly made in the first place, as that question is moot, given that Lynn is now required to pay the outstanding balance on the mortgage irrespective of whether the loan was appropriate in the first place. *Id.* at 39.

even without aligning the surcharge with any explicit loss of assets. *Markowitz*, 71 A.3d at 303 ("the Orphans' Court may impose a surcharge as punishment for the fiduciary's improper conduct"); *In re Paxson Trust I*, 893 A.2d 99, 120–21 (Pa. Super. 2006) ("a surcharge was viewed not as compensation for any possible loss, but as punishment for the fiduciary's improper conduct"); *In re Estate of Harrison*, 745 A.3d 676, 679 (Pa. Super. 2000) (imposed surcharge for self-dealing; "finding of self-dealing need not be premised on a showing of loss to the estate"; "[i]f the record substantiates a finding of self-dealing, the executor may be properly surcharged for any amount he accepted in violation of his fiduciary duty"); *see also In re Banes' Estate*, 305 A.2d 723 (Pa. 1973) ("It matters not that there was no fraud meditated and no injury done; the rule [forbidding self-dealing] is not intended to be remedial of actual wrong, but preventive of the possibility of it." (quoting *In re Noonan Estate*, 63 A.2d 80, 84 (Pa. 1949)). In other words, the amount of the surcharge did not have to correspond to a particular loss but could serve as a penalty for mere irresponsibility and "failure to exercise common prudence, common skill and common caution in the performance of the fiduciary's duty[.]" *Warden*, 2 A.3d at 573 (quoting *In re Miller's Estate*, 26 A.2d 320, 321 (Pa. 1942)). Hence, the trial court's imposition of the $50,000.00 surcharge for Lynn's improper conduct as trustee

of the Trust was appropriate, even though that amount does not directly correspond to any loss.[16]

\* \* \*

For the reasons set forth above, we find that the trial court did not abuse its discretion nor fundamentally err in applying the correct principles of law. **_Krasinski_**, 188 A.3d at 466. Thus, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/17/2021

---

[16] Arguably, $30,000.00 of this $50,000.00 surcharge could relate to three $10,000.00 trust checks that were not tracked by the accounting. **_Compare_** Page 15 of the accounting **_with_** N.T., 8/20/2018, at 57-58; **_Compare_** Exhibit 14 **_with_** N.T., 8/21/2018, at 30-32. Nonetheless, no portion of the surcharge need correlate to any particular error or loss.