J-A13018-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ESTATE OF IRENE PSTRAK, DECEASED | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: DAVID KASHULA | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 936 MDA 2022 |

Appeal from the Order Entered June 2, 2022
In the Court of Common Pleas of Luzerne County Orphans' Court Division
at No(s): 4019-1913

BEFORE:   BOWES, J., LAZARUS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LAZARUS, J.:                **FILED: APRIL 17, 2024**

David Kashula ("David") appeals from the order, entered in the Court of Common Pleas of Luzerne County, Orphans' Court Division, granting the petition to sell real estate, filed by Dana Kashula ("Executrix"), Executrix of the will of Irene Pstrak ("Decedent"), Deceased.  Upon our review, we affirm.

Decedent died on August 31, 2019.  By order entered November 13, 2019, the Orphans' Court directed the Register of Wills to admit to probate a copy of the Decedent's last will and testament dated December 23, 2011, the original of which was lost.  In her will, Decedent devised her residence, located at 596 Fellows Avenue, Hanover Township ("Property"), to her grandchildren, David and Executrix, in equal shares.  The will granted Executrix the authority

---

[*] Former Justice specially assigned to the Superior Court.

to, *inter alia*, sell the real estate devised thereunder without a court order. Specifically, Item VIII of the will provides, in relevant part:

> [M]y Executors are specifically authorized and empowered with respect to any property, real or personal, at any time held under any provision of this my Will; to . . . sell . . . and in general [t]o exercise all of the powers in the management of my Estate which any individual could exercise in the management of similar property [o]wned in its own right, upon such terms and conditions as to [sic] my Executors may deem best . . . without the necessity of a court order.

Last Will and Testament of Irene Pstrak, 12/29/11, at Item VIII.

The Register of Wills issued Letters Testamentary to Executrix on November 18, 2019. On December 10, 2021, Executrix filed a petition under 20 Pa.C.S.A. § 3353[1] to authorize the sale of the Property. Executrix alleged that the sale was necessary to satisfy the debts and expenses of the estate,

_____

[1] Section 3353 provides as follows:

> When the personal representative is not authorized to do so by this title . . . or when it is advisable that a sale have the effect of a judicial sale, he may sell any real or personal property of the estate, including property specifically devised, at public or private sale, or may pledge, mortgage, lease, or exchange any such property, or grant an option for the sale, lease, or exchange of any such property, under order of the orphans' court division of the county where letters testamentary or of administration were granted, upon such terms and upon such security and after such notice as the court shall direct, whenever the court shall find such sale, pledge, mortgage, lease, exchange, or option to be desirable for the proper administration and distribution of the estate.

20 Pa.C.S.A. § 3353.

which to date totaled $29,750.65.[2]  The petition further alleged that Executrix had entered into an agreement to sell the Property to a third party for $84,800.00, with a seller's assist of $4,800.00, but that, despite the language of the will authorizing Executrix to sell the Property, "the title company [was] unwilling to insure the [P]roperty without a [c]ourt [o]rder or sign[-]off from David [] and his counsel[.]"  Petition to Authorize Sale of Real Estate, 12/10/21, at ¶ 9.

On January 20, 2022, David filed an answer to the petition objecting to the sale.  He noted Executrix's failure to file an inventory and Pennsylvania Inheritance Tax return and alleged that certain of the expenses claimed by the Executrix were improper.  As such, he requested the removal and surcharge of the Executrix.

The court scheduled a hearing for February 8, 2022, which "turned into a settlement conference."  Orphans' Court Opinion, 8/23/22, at 2.  Thereafter, the court issued an order requiring Executrix to file an inventory no later than seven days from the date of the order and, further, requiring that counsel for the parties meet with David at the Property to permit him to inspect it.  The court gave David thirty days thereafter to notify counsel of his intention to either purchase the Property at an agreed-upon price or to proceed with a third-party sale.

---

[2] Executrix testified that she personally had loaned the estate money to pay expenses.  **See** N.T. Hearing, 6/1/22, at 15.

Executrix filed an inventory on February 15, 2022, listing as the only assets of the estate furniture worth $1,225.00 and the Property, with an assessed value of $58,509.00. On April 12, 2022, Executrix filed a motion to schedule a hearing on the petition to sell real estate, as the parties had reached an impasse in their settlement negotiations. The court scheduled a hearing for June 1, 2022, at which time David's counsel also sought to litigate the issue of the removal of Executrix. The court advised counsel that he would be allowed to litigate the issue of removal at a later hearing and that he should file a separate motion to that end. David's counsel filed a formal motion to remove Executrix during a break in the hearing and served the papers on counsel for Executrix in open court that afternoon. *See* N.T. Hearing, 6/1/22, at 59. However, the court declined to hear the matter of removal at that time, or to continue the hearing to enable both matters to be heard together.[3]

On June 2, 2022, the Orphans' Court entered an order granting Executrix's petition to sell the Property. David filed a timely notice of appeal, followed by a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. David raises the following issues for our review:

> 1. Did the trial court err[] in holding a hearing on the petition to authorize the sale of real estate without entertaining David['s] motion to remove [E]xecutrix[,] filed and served on all parties on January 20, 2022[,] which was part of David['s] answer to the petition to authorize the sale of real estate?

---

[3] The court subsequently scheduled a hearing on David's motion to remove Executrix for October 14, 2022.

2. Did the trial court err[] in granting the petition to authorize the sale of real estate when the beneficiary, David [], is entitled to fifty percent (50%) of the home/real estate under the last will and testament, has confirmed that immediate intent to purchase but was never offered nor informed of any such sale to a third party?

Brief of Appellant, at 4.

Our standard of review of the findings of an Orphans' Court is deferential.

When reviewing a decree entered by the Orphans' Court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion.

However, we are not constrained to give the same deference to any resulting legal conclusions.

*In re Fiedler*, 132 A.3d 1010, 1018 (Pa. Super. 2016) (citation omitted). "The Orphans' [C]ourt['s] decision will not be reversed unless there has been an abuse of discretion or a fundamental error in applying the correct principles of law." *In re Estate of Luongo*, 823 A.2d 942, 951 (Pa. Super. 2003).

Although David raises two claims on appeal, they are intertwined. Essentially, David claims that the Orphans' Court should have waited to rule on the petition to sell real estate until after it determined whether Executrix had mismanaged the estate and whether the debts that Executrix claimed necessitated the sale of the Property were, in fact, proper. David claims he properly raised the issue of the removal of Executrix in his answer to the petition to sell real estate and the court abused its discretion in ordering David to file a separate petition, "especially where all parties were acutely aware of

- 5 -

the issues before the [c]ourt." Brief of Appellant, at 13. Additionally, David argues that Executrix had acted "contrary to the laws of the Commonwealth . . . in failing to file the inheritance tax return and . . . [i]nventory" and, as such, "the [c]ourt ha[d] the obligation to explore those issues before ordering the sale of the family homestead [by] holding a subsequent hearing on the nature of [Executrix's] alleged improper actions." *Id.* at 15.

David further argues that 20 Pa.C.S.A. § 3351 requires the joinder of a specific devisee of real estate when a personal representative wishes to sell specifically devised property. *See id.* at 16, citing *Maier v. Henning*, 578 A.2d 1279 (Pa. 1990). He argues that *Maier* stands for the proposition that "a personal representative may only [sell] specifically devised estate property with the consent of the devisee or where the proceeds of such sale would be needed to satisfy debts, taxes[,] and other expenses incurred in the administration of the estate, or if the [w]ill so provides." Brief of Appellant, at 16-17. David asserts that, here, "there is a substantial question as to the validity of the debts which have arisen." *Id.* at 17; *id.* at 12, quoting *In re: Banes' Estate*, 305 A.2d 723, 727 (Pa. 1973). In particular, David challenges approximately $18,500.00 of the debts claimed by Executrix, alleging that they were incurred by Executrix in "caring [for] the home when [David] was a willing purchaser since the date of [Decedent's] death." Brief of Appellant, at 17-18. David also claims that Executrix "never served [him] with the notice of beneficial interest, as required under the Probate[,] Estate[s,] and

Fiduciaries Code, and also never advised him of [her] attempt to sell the [P]roperty[.]" *Id.* at 19.

In response, Executrix argues that the Orphans' Court acted within its discretion by requiring David to file a separate petition seeking to remove her as personal representative. She argues that the "alleged motion contained in the [answer to the petition to sell real estate] is improper and could not be considered by the [Orphans' Court]." Brief of Appellee, at 15. Rather, "[t]he proper procedure that should have been followed . . . was to file a petition and request the issuance of a citation so that [Executrix] could have the ability and opportunity to show cause why she should not be removed[.]" *Id.* Moreover, Executrix argues, the conduct of a trial is within the discretion of the trial court, and the court acted within its discretion by declining to hear matters related to removal at the hearing on the petition to sell. *See id.* at 16-17. Executrix argues that David should have filed a petition to compel an account if he had concerns regarding the validity of certain debts or expenses of the estate. *See id.* at 17.

Executrix further argues that, not only did the Orphans' Court have authority to permit the sale of specifically devised real property pursuant to section 3353, but the will itself granted the Executrix the authority to do so, with no exception for property specifically devised. Executrix concludes that, where, as here, the will grants express authority to sell any estate property and the remaining assets of the estate are insufficient to satisfy its debts, she

acted properly in seeking to sell the Property and the court did not err in authorizing her to do so.

After our review, we conclude that the court acted within its discretion in approving the sale of the Property. First, as Executrix notes, the Decedent's will specifically authorized her to sell "any property . . . at any time held under any provision of this my Will . . . without the necessity of a court order." Last Will and Testament of Irene Pstrak, 12/29/11, at Item VIII. While section 3351 of the Probate, Estate and Fiduciaries Code requires the joinder of specific devisees of real property when a personal representative wishes to sell specifically devised real property, this requirement is subject to the powers granted to the personal representative in the will.[4] The Decedent herein provided that Executrix could sell any and all property of the estate, without excepting specifically devised property.

Additionally, the evidence adduced at the hearing supported the Orphans' Court's conclusion that a sale was necessary to satisfy the outstanding debts, taxes, attorney's fees, and other expenses of the estate. The inventory filed by Executrix reflects assets, other than the Property, totaling $1,225.00. In her petition to sell real estate, Executrix averred that the estate's debts totaled $29,750.65. *See* Petition to Authorize Sale of Real

_____

[4] Section 3351 provides, in relevant part, that, "**[e]xcept as otherwise provided by the will**, if any, the personal representative may sell, at public or private sale, . . . any real property not specifically devised, and with the joinder of the specific devisee real property specifically devised." 20 Pa.C.S.A. § 3351 (emphasis added).

Estate, 12/10/21, at ¶ 6; *id.* at Exhibit A.  By the time of the hearing, those debts had increased to $31,580.61.  **See** N.T. Hearing, 6/1/22, at 15; **see also** Petitioner's Hearing Exhibit C.  David argues that approximately $18,500.00 of those expenses were inappropriate "expenses for the caring of the home when [David] was a willing purchaser since the date [of Decedent's] death."  Brief of Appellant, at 17-18.  However, even assuming, *arguendo*, that those expenses were ultimately disallowed by the court at audit, there would still remain over $13,000.00 in other unchallenged expenses that the estate is without funds to pay.[5]

David also asserts that the court should have denied the proposed sale based on his offer at the hearing to place $40,000.00 in escrow pending the filing and adjudication of an account. [6]  In response, Executrix argues that if

---

[5] David relies on our Supreme Court's decision in **In re Banes' Estate**, 305 A.2d 723 (Pa. 1973), for the proposition that "heirs should have an opportunity of showing that claims are not well[-]founded, or to pay just debts and avoid a sale.  Where the indebtedness is denied, it must be duly established before any order of sale is made." **Id.** at 727.  However, the facts of that case are inapposite.  First, unlike here, in **Banes' Estate**, the decedent's will specifically prohibited the sale of the property in question.  Second, in **Banes' Estate**, the property was sold—without notice to the beneficiaries—for $110,000.00 to pay debts amounting to less than $10,000.00.  Here, as noted above, even if every expense David questions is ultimately disallowed, there remain over $13,000.00 in unpaid expenses, fees, and other costs which the estate lacks funds to pay.  David's offer of $40,000.00 is insufficient to both pay the debts of the estate and make Executrix whole for her one-half share of the Property.

[6] David had previously offered to purchase the Property for $29,000.00, which was half of the assessed value of the Property.  The court found this offer to be "woefully inadequate as against the offer of the third party of

*(Footnote Continued Next Page)*

that money were used to pay approximately $31,000.00 in debts and administration expenses and title to the Property were transferred to David, David would end up with $40,000.00 of net value while Executrix would receive less than $10,000.00.[7] *See* Brief of Appellee, at 20. We agree with

_____

$80,000.[00.]" Orphans' Court Opinion, 8/23/22, at 8. At the hearing on the petition to sell property, David offered to place $40,000.00 in escrow after the court expressed reservations regarding the fairness of David's offer to pay $29,000.00.

[7] Even if the court were to disallow the "carrying costs" challenged by David, Executrix would only net approximately $27,000.00, as compared to David's $40,000.00, on a property that was devised to them in equal shares. In any event, the court found credible Executrix's testimony that, in the period between Decedent's death and autumn of 2021, David failed to respond to numerous attempts to contact him regarding issues involving the estate and the removal of his personal belongings from the Property. As the court observed in its opinion,

> It is ironic that [David] faults the Executrix for incurring taxes, utilities, and other expenses because she would not "confirm" the sale to [him]. As previously indicated[,] he proposed to acquire an $80,000.00 asset for $29,000.[00]. He made no attempt to purchase the [P]roperty until the fall of 2021, two years after Decedent's death. At that time his offer was $29,000.00[,] which was woefully inadequate. By resisting the sale proposed to the third party, [David] is the one who has contributed to the increased costs and expenses.
>
> [David] claims costs were increased because his personal belongings had to be placed in storage. However, despite many attempts by the Executrix and her counsel to have David retrieve his items, these requests went unanswered.

Orphans' Court Opinion, 8/23/22, at 10. *See also* N.T. Hearing, 6/1/22, at 23 ("Q: [] When did you offer to have [David] purchase the home? A: I did not offer to have him purchase the home because he had not returned any of my prior calls about the estate. Therefore, I didn't have the opportunity to speak to him about purchasing the home."); *id.* at 33 ("Q: [] Did you as the
*(Footnote Continued Next Page)*

Executrix this proposal is inequitable and the court did not abuse its discretion in rejecting it.

In sum, where the other assets of the estate were insufficient to pay the debts, taxes, and other expenses of administration, and David's offer of $40,000.00 would have resulted in an inequitable distribution to Executrix, as co-devisee, we cannot conclude that the Orphans' Court abused its discretion in ordering the sale of the Property. While the better practice may have been for the court to postpone the hearing until it could also rule on the propriety of the expenses claimed by Executrix, here, where Executrix had an agreement with a willing buyer and the unchallenged expenses far exceed the value of the other assets of the estate, any error was harmless.

---

executrix of the estate at any time become aware of . . . the request of Attorney Lantz regarding [David's] personal property? . . . A: I don't recall having that. What I do recall is a sheriff coming to my home to serve me with notice that [David] was going to sue me for these items after I made multiple attempts to contact him to come and get them.").

- 11 -

Order affirmed.

Bowes, J., Joins the Memorandum.

Stevens, PJE., Concurs in the result.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/17/2024